## UNITED STATES DISTRICT COURT
## FOR DISTRICT OF KANSAS

| | |
|---|---|
| **CBW BANK,** a Kansas State Chartered Bank, | |
| **Plaintiff,** | |
| v. | Case No. |
| The **FEDERAL DEPOSIT INSURANCE CORPORATION**; **JENNIFER WHANG**, in her official capacity as an ALJ of OFIA; and **C. SCOTT MARAVILLA**, in his official capacity as an ALJ of OFIA, | |
| **Defendants.** | |

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiff CBW Bank, a Kansas State Chartered Bank ("CBW") brings this action for declaratory and injunctive relief, alleging as follows:

## INTRODUCTION

1.      This action stems from an unlawful attempt by the Federal Deposit Insurance Corporation ("FDIC") to subject CBW to an administrative proceeding to impose civil monetary penalties conducted by an administrative law judge ("ALJ") housed in the Office of Financial Institution Adjudication ("OFIA") whose structures violate Article II, Article III, and the Seventh Amendment of the Constitution of the United States.

2.      The first way in which the FDIC proceedings violate CBW's constitutional rights is by seeking to impose civil monetary penalties with an ALJ sitting as the fact-finder and not a jury in an Article III court as the Seventh Amendment requires.

3.      FDIC has statutory authority to levy significant civil monetary penalties ("CMP") for violations of applicable laws and regulations.  12 U.S.C. § 1818(i)(2).  On November 19, 2024,

the FDIC initiated an administrative proceeding to levy CMPs against CBW based on alleged failures to comply with the Bank's anti-money laundering ("AML") compliance obligations.

4.      The FDIC proceedings against CBW violate the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII.

5.      "The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

6.      The Seventh Amendment right is centered on the "[m]aintenance of the jury as a fact-finding body." *Dimick*, 293 U.S. at 486.

7.      "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Jarkesy*, 144 S. Ct. at 2128 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)).

8.      "[C]ivil penalties are a type of remedy at common law that could only be enforced in courts of law." *Jarkesy*, 144 S. Ct. at 2129 (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)) (cleaned up).  The remedy of civil monetary penalties is dispositive here.  *Id.*

9.      The cause of action is also legal in nature.  Historically, actions to recover civil monetary penalties "ha[ve] been viewed as a type of action in debt requiring trial by jury."  *Id.* (quoting *Tull*, 481 U.S. at 418-19).

10.     Not even Congress can "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal."  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989).  Nor can Congress "confer the Government's 'judicial Power'

on entities outside Article III." *Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, 584 U.S. 325, 334 (2018) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

11.    The second way the administrative proceedings violate CBW's constitutional rights is by subjecting the Bank to an administrative proceeding presided over by an executive officer unconstitutionally insulated from presidential control.

12.    Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020).

13.    To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010).

14.    This removal power extends to ALJs who "perform substantial executive functions." *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024). "The activities of executive officers may 'take "legislative" and "judicial" forms, but they are exercises of—indeed, under our constitutional structure they *must* be exercises of— the "executive Power,"' for which the President is ultimately responsible." *United States v. Arthex, Inc.*, 594 U.S. 1, 17 (2021) (quoting *Arlington v. FCC*, 569 U.S. 290, 305, n.4 (2013)) (emphasis in original).

15.    Article II requires that the President "have sufficient control over the performance of [such ALJs'] functions, and, by implication, . . . be able to choose who holds the positions." *Jarkesy*, 34 F.4th at 463. This constitutionally required degree of control is lacking when the ALJs are insulated by "[t]wo layers of for-cause protection"—that is, when the ALJs are removable only for cause, by officials who themselves are removable only for cause. *Id.*; *see Free Enter. Fund*, 561 U.S. at 492–508.

16.    The same reasoning applies to the ALJs used by the FDIC.  FDIC ALJs qualify as "inferior Officers."  *See Burgess v. FDIC*, 871 F.3d 297, 303 (5th Cir. 2017).  Their positions are "'established by Law,'" and they "'carry out important functions' over which they 'exercise significant discretion.'"  *Id.* at 302 (cleaned up) (quoting *Freytag v. Commissioner*, 501 U.S. 868, 881-82 (1991)).

17.    The FDIC ALJs are covered by two layers of removal protection, which unconstitutionally insulate them from oversight by the President.  The ALJs can only be removed for "good cause established and determined by the Merit Systems Protection Board."  *See* 5 U.S.C. § 7521(a).  The MSPB members also enjoy "for cause" removal protection.  5 U.S.C. § 1202(d) (subject to removal only for "inefficiency, neglect of duty, or malfeasance in office").

18.    Moreover, the majority of FDIC Board (three of five) have removal protection via fixed-terms and may only be removed by the President for cause.  *See Wiener v. United States*, 357 U.S. 349, 352, 356 (1958) (equating fixed-length terms with for-cause removal protection); *Free Enter. Fund*, 561 U.S. at 487 (same).  The other two members are *ex officio* members—the head of the CFPB and OCC—who can be removed at will.

19.    The FDIC participates in an ALJ-sharing arrangement whereby not just the FDIC Board but three other agencies—Office of Comptroller of Currency ("OCC"), National Credit Union Administration ("NCUA"), and Federal Reserve Board ("FRB") (collectively the "Banking Agencies")— have entered into a memorandum agreement create an entity called the Office of Financial Institution Adjudication ("OFIA").  The FDIC hosts OFIA and employs the ALJs used by the Banking Agencies.[1]

---

[1] *About Us*, Off. of Fin. Institution Adjudication, https://www.ofia.gov/who-we-are/about-us.html (last visited July 26, 2024) ("OFIA Website").

20.    There are currently two ALJs housed in the OFIA division.  They "preside[] over administrative enforcement proceedings brought by" and "issue[] recommended decisions to the relevant agency head."[2]

21.    Under the memorandum agreement, any change to OFIA personnel, including specifically the ALJs, must be approved by all four Banking Agencies.  This means that before an ALJ can be referred to the MSPB for "for cause" removal proceedings, the majority of the members of each Banking Agency must agree.  FDIC has five members, OCC has one member (the Comptroller), NCUA has three members, and FRB has seven members.

22.    As discussed above, a majority of the FDIC members have removal protection.  The NCUA members and FRB members all are tenure-protected and therefore can only be removed for cause.  *See* 12 U.S.C. § 242 (FRB); *id.* § 1752a(c) (NCUA).

23.    Two of the three members of the MSPB would then need to agree there was cause for an ALJ's removal.

24.    Thus, at least 11 different people[3] would need to agree that it is appropriate to terminate an ALJ before that ALJ could be removed from office.  Of those, at least one FDIC member with removal protection, two NCUA members, and four FRB members with removal protection would have to vote in favor, as would two MSPB members with removal protection.

25.    The existence of unconstitutional removal protections inflicts twofold harm.  It limits the President's constitutional authority, of course.  But it also produces an administrative bureaucracy that operates on regulated parties without the constitutionally required "degree of

---

[2] *Id.*

[3] Because the OCC Comptroller also is an ex officio member of the FDIC, this means that although it would take 3 FDIC votes, 1 OCC vote, 2 NCUA votes, and 4 FRB votes, plus 2 MSP votes. Because the OCC Comptroller can vote twice given the dual capacity as of head of the OCC and an ex officio FDIC member these 12 votes could technically be accomplished by 11 people.

electoral accountability." *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021). This is especially true here where the OFIA ALJs used by the FDIC are insulated from the President by at least two layers of officials, who also have for-cause removal protection, spread across three different Banking Agencies and the MSPB (plus a vote from the OCC Comptroller).

26. Because such removal protections affect not just the President, but also ordinary Americans who must interact with the administrative state, it makes no legal difference whether the President objects to a given statutory limit on his removal powers: "the separation of powers does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.'" *Free Enter. Fund*, 561 U.S. at 497 (citations omitted).

27. When a party is regulated by administrative officials who are shielded by unconstitutional removal protections, Supreme Court precedent teaches that the party is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* at 513.

28. To prevent CBW from undergoing protracted unconstitutional administrative proceedings—after which CBW is unlikely to have a chance to secure meaningful retrospective relief—the Court should stay or enjoin the current agency proceedings, declare that the FDIC's structure violates the Constitution, and permanently enjoin the FDIC from pursuing statutory penalties against CBW in unconstitutionally structured proceedings.

29. For these reasons CBW is entitled to declaratory and injunctive relief to ensure that it is not subjected to unconstitutional proceedings before an unconstitutionally structured agency.

## JURISDICTION AND VENUE

30. This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over the CBW's claims that fundamental

aspects of the FDIC's structure violate the Constitution and are wholly collateral to the agency proceedings. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 900 (2023).

31.    The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under the Court's inherent equitable powers.

32.    Venue is proper in this district under 28 U.S.C. § 1391(e)(1).  Defendants are officers of an agency of the United States acting in their official capacity.  CBW maintains its principal place of business in Weir, Kansas, where it is headquartered.  A substantial part of the events or omissions giving rise to the claims also occurred in this district.

## PARTIES

33.    Plaintiff CBW, formerly known as Citizens Bank of Weir, is a single-branch, Kansas state-chartered bank headquartered in Weir, Kansas.

34.    Defendant FDIC is an administrative agency of the United States, headquartered in Washington, D.C.

35.    Defendant Jennifer Whang is an OFIA Administrative Law Judge.  She is sued in her official capacity.

36.    Defendant C. Scott Maravella is an OFIA Administrative Law Judge.  He is sued in his official capacity.

37.    Either ALJ Whang or ALJ Maravilla will be assigned the administration adjudication in the challenged agency proceedings.

## FACTS

### CBW Bank

38.     CBW was acquired by CB Bancshares Corp, a bank holding company set up Suchitra Padmanabhan and her husband, Suresh Ramamurthi, during the 2008 global financial crisis.

### The Federal Deposit Insurance Corporation

#### The FDIC's Structure

39.     The FDIC was created by the Banking Act of 1933.  *See* Pub. L. No. 73-66 § 12B(a), 48 Stat. 162, 168 (June 16, 1933).

40.     The Board of Directors for the FDIC consists of five members.  12 U.S.C. § 1812(a)(1).

41.     Three of those members are appointed by the President to fixed, six-year terms.  *Id.* § 1812(c)(1).  The three appointed members of the FDIC are tenure-protected and may only be removed by the President for cause.  *See Wiener*, 357 U.S. at 352, 356; *Free Enter. Fund*, 561 U.S. at 487 (same).

42.     The remaining two FDIC directors are *ex officio* members of the Board.  They are the Director of the CFPB and the Comptroller of the Currency.  *See* 12 U.S.C. § 1812(a)(1)(B)-(C).

43.     The CFPB was created by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank").  Section 1101 of Dodd-Frank provided that the CFPB would be headed by a single director appointed by the President, that this director was to "serve for a term of 5 years," and that the director could only be removed "for cause."  Pub. L. No. 111-203, tit. X, § 1101(c), 124 Stat. 1376, 1964 (July 21, 2010) (codified at 12 U.S.C. § 5491).  *Seila Law* held in 2020 that the "structure of the CFPB violate[d] the separation of powers" because the

CFPB Director did not serve at the pleasure of the President.  140 S. Ct. at 2192, 2209.  After *Seila Law* the President has had the power to fire the CFPB Director at will.

44.    The President may remove the OCC Comptroller at will.  *See* 12 U.S.C. § 2.

45.    As the law currently stands, the President cannot remove a majority of the FDIC Board at will because three of its five members enjoy "for cause" protection.

The FDIC's Enforcement Power

46.    FDIC is authorized by Congress to investigate banks and bankers and to enforce a variety of federal banking laws and regulations.  The Federal Deposit Insurance Act of 1950, as amended (the "Act"), authorizes the FDIC to issue a "notice of charges" against an enforcement target, 12 U.S.C. § 1818(b)(1); to issue "cease-and-desist orders," *id.* § 1818(b)-(c); to conduct hearings, *id.* § 1818(h); to force banks to "correct conditions" resulting from violations of laws, *id.* § 1818(b)(6).

47.    FDIC is empowered with significant enforcement power under the Act.

48.    One such enforcement power is FDIC's authority under the Act to levy significant civil monetary penalties for violations of applicable laws and regulations, *id.* § 1818(i)(2).

49.    FDIC is empowered to seek a "civil monetary penalty" against an enforcement target.  *See id.* § 1818(i).

50.    Three tiers of civil monetary penalties are set forth in Section 8(i).

51.    Under the "First Tier," FDIC is empowered to issue "a civil penalty of not more than $5,000 for each day" on any regulated financial institution that violates "any law or regulation"; certain "final or temporary order[s]" authorized under the Act; certain "condition[s] imposed in writing by a Federal banking agency"; and "written agreement between such depository institution and such agency."  *Id.* § 1818(i)(2)(A).

52.     Under the "Second Tier," FDIC is empowered to order "a civil penalty of not more than $25,000 for each day during which such . . . breach continues" when certain aggravating factors are present.  *Id.* § 1818(i)(2)(B).  When a regulated financial institution violates Section 8(i)(2)(A), "recklessly engages in an unsafe or unsound practice in conducting the affairs of such insured depository institution"; or "breach[es] any fiduciary duty," such penalties can be imposed where the violation "(I) is part of a pattern of misconduct"; (II) "causes or is likely to cause more than a minimal loss to such depository institution"; or (III) "results in pecuniary gain or other benefit to such party."  *Id.*

53.     The "Third Tier" allows the imposition of the statutory maximum civil penalty where the conditions of Section 8(i)(2)(B)(i) are met and the institution acts "knowingly," *id.* § 1818(i)(2)(C)(i), and "knowingly or recklessly causes a substantial loss to such depository institution or a substantial pecuniary gain or other benefit to such party by reason of such violation, practice, or breach," *id.* § 1818(i)(2)(C)(ii).  The maximum penalty amount for purposes of subsection (C) for an "insured depository institution" is "an amount not to exceed the lesser of . . . $1,000,000" or "1 percent of the total assets of such institution" per day, *id.* § 1818(i)(2)(D)(ii), or for "any person other than an insured depository institution, an amount to not exceed $1,000,000" per day, *id.* § 1818(i)(2)(D)(i).  A "penalty imposed under subparagraph (A), (B), or (C) may be assessed and collected by the appropriate Federal banking agency by written notice" and unless a hearing is timely requested, "the assessment shall constitute a final and unappealable order."  *Id.* § 1818(i)(2)(E).

54.     Upon issuance of a notice to a party "against whom any penalty is assessed under [Section 8(i)]" that party "shall be afforded an agency hearing if such institution or person submits

a request for such hearing within 20 days after the issuance of the notice of assessment." *Id.* § 1818(i)(2)(H).

55.     Upon the initiation of enforcement proceedings to collect a civil monetary penalty when a hearing is requested, the parties litigate in a "hearing" before an administrative law judge. *See* 12 C.F.R. § 308.35; *see id.* § 308.5(a) (FDIC administrative proceedings "must be conducted" by ALJs "in accordance with the provisions of" the Chapter 5 of the Administrative Procedure Act, 5 U.S.C §§ 500-596).

56.     After the hearing concludes, the ALJ prepares a "recommended decision" for presentation to the FDIC's Board, which will include both "recommended findings of fact" and "recommended conclusions of law." 12 C.F.R. §§ 308(b)(8), 308.38. Parties may then file "exceptions" to the ALJ's recommended decision with the FDIC's "Administrative Officer." *Id.* § 308.39. Those exceptions may be made "to the ALJ's recommended decision, findings, conclusions, or proposed order, to the admission or exclusion of evidence, or to the failure of the ALJ to make a ruling proposed by a party." *Id.* The Administrative Officer then refers the matter "to the [FDIC] Board of Directors for final decision." *Id.* § 308.40(a). Their review "will be based upon review of the entire record of the proceeding," although they may limit review only to arguments and exceptions raised. *Id.* § 308.40(c)(1).

57.     At that point, the FDIC's Board may either (1) "render a final decision" or (2) "order[] that the action or any aspect thereof be remanded to the administrative law judge for further proceedings." *Id.* § 308.40(c)(2).

**The Office of Financial Institution Adjudication**

58.     FDIC regulations provide that hearings "shall be held before an administrative law judge of the Office of Financial Institution Adjudication." *Id.* § 308.103(a).

59.    The FDIC participates in a "ALJ-sharing" arrangement with three other Banking Agencies.

60.    Section 916 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") required a specified group of "Federal banking agencies" to "jointly . . . establish their own pool of administrative law judges" and "develop a set of uniform rules and procedures for administrative hearings" before those judges.  Pub. L. No. 101-73 § 93, 103 Stat. 183, 486 (Aug. 9, 1989) (codified at 12 U.S.C. § 1818 note (1992)).

61.    After FIRREA was passed, FDIC, OCC, FRB, and NCUA developed, through rulemakings, a common set of procedures governing the procedures to be used in administrative hearings.  *See generally Uniform Rules of Practice and Procedure*, Final Rule, 56 Fed. Reg. 37,968 (FDIC Aug. 9, 1991).

62.    The Banking Agencies also executed a memorandum of understanding in 1991— the "Interagency Administrative Law Judge Agreement" (the "1991 OFIA Agreement"), a copy of which is attached hereto as Exhibit A.[4]  Through the 1991 OFIA Agreement, the Banking Agencies purported to "create[]" a new entity called the "Office of Financial Institution Adjudication" ("OFIA").  Ex. A at 2 ¶ 1(e).  The 1991 OFIA Agreement further provides that the "administrative law judges" of OFIA "will be selected by mutual agreement among the [Banking] Agencies."  *Id.* at 2 ¶ 2(a).

63.    The Banking Agencies entered into an "Amended and Restated Administrative Law Judge Agreement" in July of 2011 (the "2011 OFIA Agreement"), a copy of which is attached hereto as Exhibit B.  The 2011 OFIA Agreement provided that the FDIC, in its capacity as the

---

[4]  This document, as with the 2011 and 2018 OFIA agreements, were obtained via a Freedom of Information Act Request in *Burgess v. FDIC*, 639 F.Supp.3d 732 (N.D. Tex. 2022).  The FDIC did not contest their authenticity in that matter.

"host" agency for OFIA, "shall employ the administrative law judges of the [OFIA] Staff," but that "[a]ny change to the Office Staff personnel"—specifically including the OFIA ALJs—"shall be subject to the prior written approval of all [Banking] Agencies." Ex. B at 3 ¶ 3; *see id.* at 8.

64.     The Banking Agencies entered into the "Administrative Law Judge Agreement of 2018" in December of 2017 (the "2018 OFIA Agreement"), a copy of which is attached hereto as Exhibit C.  The 2018 OFIA Agreement renewed the 2011 OFIA Agreement, the latter of which was set to expire at the end of 2017.  *See* Ex. C at 1 (final "whereas" clause).  The 2018 OFIA Agreement continues to provide that "[a]ny change to the Office Staff personnel shall be subject to the prior written approval of all [Banking] Agencies."  *Id.* at 3 ¶ 2; *see id.* at 7.

65.     OFIA describes itself as an "inter-agency group of administrative law judges" that is "host[ed]" by the FDIC.  OFIA Website, *supra* note 1; *see* 56 Fed. Reg. at 37,977 (now codified at 12 C.F.R. § 308.3) (FDIC regulations defining the term "Office of Financial Institution Adjudication" to "mean[] the executive body charged with overseeing the administration and administrative enforcement proceedings" of the Banking Agencies (emphasis added)).  At present, OFIA "presides over administrative enforcement proceedings brought by" the Banking Agencies, "and issues recommended decisions to the relevant agency head."  OFIA Website, *supra.*  OFIA's website states that the "administrative operations of OFIA are governed by an interagency memorandum of understanding"—i.e., the 2018 OFIA Agreement—which "provide[s] for general oversight by an interagency committee and cost-sharing among the constituent agencies."  *Id.*

66.     There are currently two ALJs within OFIA: ALJ Whang and ALJ Maravilla.

67.     Pursuant to the FDIC's regulations, the "administrative law judge shall have all powers necessary to conduct a proceeding."  12 C.F.R. § 308.5(a).  The ALJs used by the FDIC have authority to issue subpoenas, rule on the admissibility of evidence, regulate hearings, rule on

a variety of procedural and substantive motions, and "do all other things necessary and appropriate to discharge the duties of an ALJ." *Id.* §§ 308.5(b)(2), (3), (5), (7), (11).

68.     Despite the significant executive authority that the ALJs used by the FDIC wield, they enjoy an extraordinary level of protection from removal.  In order to remove an OFIA ALJ, the following must occur: first, all four of the Banking Agencies would need to unanimously concur, in writing, to the initiation of removal proceedings.  Assuming the Banking Agencies are fully staffed, initiating a removal proceeding would require separate sign-offs from at least nine different officers—the Comptroller, three of the five members of the FDIC Board (one of whom could be the Comptroller), four of the seven members of the FRB, and two of the three members of NCUA.  Even then, the ALJ could not be fired unless at least two of the three members of the MSPB also found that there was cause to do so.  *See* 5 U.S.C. § 7521(a) (ALJs can be removed only for "good cause established and determined by the Merit Systems Protection Board").

69.     All of the directors of the FRB and NCUA are tenure-protected and may only be removed for cause.  *See* 12 U.S.C. § 242 (FRB); *id.* § 1752a(c) (NCUA).

70.     Similarly, the members of the MSPB can only be removed by the President for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d); *see Long v. Social Security Admin.*, 635 F.3d 526, 534-35 (Fed. Cir. 2011).

**The FDIC's Investigation of CBW**

71.     On November 19, 2024, the FDIC filed a notice of charges assessing a Civil Money Penalty ("CMP") against CBW for years-old conduct that occurred in the Bank's long-abandoned correspondent banking and money services businesses.

72.     Prior to the proposed assessment and as part of its routine supervisory authority, the FDIC conducted regular examinations of the Bank's Banking Secrecy Act and anti-money

laundering compliance program.  During this routine oversight, there was no evidence to suggest the Bank or any Bank employee engaged in any deliberate misconduct, or recklessly or willfully disregarded any AML risk.  The Bank has always operated in good faith, taking swift action to address the FDIC's concerns, including shuttering the correspondent banking and money service businesses in 2020.

73.    However, the FDIC continues to pursue a penalty assessment against the Bank in connection with supervisory visits in 2019.

74.    The penalty sought by the FDIC, is unreasonable and unprecedented for a bank of this size, complexity, and supervisory history.  There is no justifiable basis for any CMP, let alone for one of this magnitude given the conduct at issue in this case.

75.    On November 18, 2022, CBW received a 15-day notice regarding the FDIC's consideration of potential civil monetary penalties.

76.    The parties engaged in good faith settlement negotiations after CBW responded to the 15-day notice.

77.    CBW's counsel was informed on November 18, 2024, that the FDIC planned to issue a notice assessing civil monetary penalties under Section 8(i)(2)(H) the following day.  At that time, CBW's counsel was informed by the FDIC that unless CBW agreed to a stipulation the FDIC proposed, the FDIC would initiate proceedings to impose the CMPs.  CBW did not accept the settlement and, on November 19, 2024, the FDIC served CBW with its notice of charges.

78.    CBW intends to request a hearing under Section 8(i)(2)(H) within the time proscribed by statute.

79.    That hearing will occur before one of the two OFIA ALJs, both of whom are named as Defendants in their official capacities in this matter.

80.     As part of its preparation to bring the charges, the FDIC collected voluminous documents from CBW.  Certain of those documents contain information protected by, among other protections, attorney-client privilege.  Nevertheless, despite repeated requests from the Bank, the FDIC refuses to return those documents or acknowledge the existence of attorney-client privilege as against the FDIC.  Based on information and belief, the FDIC therefore has not screened attorneys who reviewed privileged information from participation in the administrative proceeding or otherwise ceased using the privileged information obtained from CBW.

### COUNT I – OFIA ALJ'S ADJUDICATION OF LEGAL CLAIMS WITHOUT A JURY TRIAL VIOLATES THE SEVENTH AMENDMENT AND ARTICLE III

81.     CBW restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

82.     The Seventh Amendment to the Constitution of the United States provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."  U.S. CONST. amend. VII.

83.     The Seventh Amendment right is centered on the "maintenance of the jury as a fact-finding body."  *Dimick*, 293 U.S. at 486.  Parties are entitled "to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages.  Both are questions of fact."  *Id.*

84.     "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'"  *Jarkesy*, 144 S. Ct. at 2128 (quoting *Granfinanciera*, 492 U.S. at 53).

85.     "To determine whether a suit is legal in nature" courts are "to consider the cause of action and the remedy it provides."  *Id.* at 2129.

86.    The FDIC is seeking statutory civil monetary penalties here pursuant to 12 U.S.C. 1818(i)(2) through the proceedings against CBW.

87.    Here, the "the remedy is all but dispositive." *Id.*  A "monetary remedy is legal is if it is designed to punish or deter the wrongdoer" and "a civil sanction that cannot fairly be said solely to serve a remedial purpose" is punitive and therefore a legal remedy.  *Id.*; *see also Tull*, 481 U.S. at 422 ("A civil penalty was a type of remedy at common law that could only be enforced in courts of law.  Remedies intended to punish culpable individuals . . . were issued by courts of law, not courts of equity.").  Civil monetary penalties are remedies requiring a jury under the Seventh Amendment.  *Id.* at 2129.

88.    Further, the cause of action is legal in nature: "[a]ctions by the Government to recover civil penalties under statutory provisions . . . historically ha[ve] been viewed as a type of action in debt requiring trial by jury."  *Id.* (quoting *Tull*, 481 U.S. at 418-19).  After passage of the Seventh Amendment, "federal courts followed this English common law in treating the civil penalty suit as a particular type of an action in debt, requiring a jury trial."  *Id.*

89.    On information and belief, the FDIC is seeking to impose the CMP under 1818(i)(2)(B), which requires a showing of "recklessly engag[ing] in an unsafe or unsound practice in conducting the affairs of such insured depository institution" or "breach[ of] any fiduciary duty."

90.    The statutory provisions in Section 8(i) carry "common law soil" and are legal in nature requiring a jury.  *Id.* at 2137.

91.    The fact that FDIC proceedings are administrative in nature does not allow the FDIC to withdraw these claims from the protections of an Article III court and a jury.  "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action

to which it attaches and placing exclusive jurisdiction in an administrative agency" like the FDIC. *Granfinanciera*, 492 U.S. at 61.

92.     These claims are not ones that "historically could have been determined exclusively by the executive and legislative branches." *Jarkesy*, 144 S. Ct. at 2132 (quoting *Stern v. Marshall*, 564 U.S. at 484). Nor does this scenario fall within the litany of circumstances that fall within the so-called "public rights" exception allowing the claims to be withdrawn from the cognizance of an Article III jury. *See id.* at 2131-34.

93.     Without interim injunctive relief from this Court, CBW's claims will be improperly adjudicated by an administrator instead of a jury in an Article III court. These claims are wholly collateral to any agency proceeding and are not based on any particular finding or decision the ALJ might make as fact-finder. An "illegitimate proceeding, led by an illegitimate decisionmaker" "that has already happened cannot be undone." *Axon*, 598 U.S. at 191. CBW "will lose [its 7th Amendment] rights not to undergo the complained-of agency proceedings" without a jury in an Article III court "if [it] cannot assert those rights until the proceedings are over." *Id.* at 192.

94.     These rights attach regardless of whether there is in fact a finding of liability against CBW, because CBW has in all circumstances a right to have the jury sit as the fact-finding body under the Seventh Amendment in the first instance. *See Ward v. Village of Monroeville*, 409 U.S. 57, 61-62 (1972). Because CBW is "entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings." *Burgess*, 639 F. Supp. 3d at 749.

95.      Here simply being made to participate in the unconstitutional hearing causes CBW irreparable harm.

96.     Moreover, through the unconstitutional proceedings, FDIC seeks to impose civil monetary penalties in an amount it is aware will consume substantial amounts of the Bank's capital and harm its reputation.

97.     CBW bears a strong likelihood of success on this claim for the reasons detailed above.

98.     Yet unless the FDIC is enjoined from proceeding against CBW before an OFIA ALJ rather than in an Article III court and with a jury, CBW will be irreparably harmed.

99.     Deprivation of an individual constitutional right, as the Seventh Amendment is, is an irreparable injury—even for minimal amounts of time. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

100.    The harm to CBW, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the FDIC if such relief is granted.

101.    The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## COUNT II – OFIA'S ALJS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

102.    CBW restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

103.    OFIA ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions.  12 C.F.R. § 308.5; *see Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *Burgess*, 871 F.3d at 303.

104.    At the same time, the FDIC and the other Banking Agencies may attempt to remove its ALJs "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). In turn, by statute, Members of the MSPB are removable only for "inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d). Certain appointed members of the FDIC and all members of the FRB and NCUA enjoy for-cause removal protection. *See* 12 U.S.C. § 1812(c)(1); *id.* § 242 (FRB); *id.* § 1752a(c) (NCUA). The FDIC, FRB, and NCUA, as well as the OCC, must all agree to refer an ALJ to the MSPB.

105.    Given OFIA ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.

106.    The statutes' provision of at least two layers of removal protection prevents that exercise of presidential authority and thus violates Article II of the Constitution. *See Free Enter. Fund*, 561 U.S. at 492-508. And given the unique structure of OFIA—the entity that houses the ALJs FDIC uses—the removal protections are especially strong here given four different Banking Agencies, the majority of whose members enjoy for-cause removal protection, have to agree to refer an OFIA ALJ to the MSPB.

107.    But for these unlawful removal restrictions, either the ALJ assigned to CBW's administrative case or the FDIC members and Banking Agencies who bear responsibility to supervise and exercise control over the ALJ would face the prospect of removal by the President based on their conduct during the proceedings.

108.    Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-

settled precedent. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *see also, e.g.*, *Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom. Axon Enter.*, 143 S. Ct. 890.

109.    This injury exists even if a President does not actively desire to remove a particular ALJ, given the potential for removal influences how rational ALJs carry out their duties.  After all, Congress sought to make OFIA ALJs politically independent for a reason: it wanted to insulate them from political pressures.  *See, e.g.*, *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part and dissenting in part).  A showing of particularized cause and effect is not necessary to declare that such insulation from Presidential oversight is unconstitutional.

110.    Moreover, the Supreme Court has explained that the key focus is on whether the unconstitutional provision caused harm to the party challenging constitutionality.  *See Collins*, 594 U.S. at 259 (allowing that "an unconstitutional provision [can] inflict compensable harm").

111.    Here simply being made to participate in the unconstitutional hearing causes CBW irreparable harm.

112.    Moreover, through the unconstitutional proceedings, FDIC seeks to impose civil monetary penalties in an amount it is aware will consume substantial amounts of the Bank's capital and harm its reputation.

113.    Accordingly, CBW is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [CBW is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

114.    Moreover, without relief from this Court, CBW will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

115.     Unless the FDIC is enjoined from proceeding against CBW before an ALJ unconstitutionally insulated from presidential oversight, at least until the defect is remedied, CBW will be irreparably harmed.

116.     Further, if the FDIC members, on recommendation from the ALJ, issue a final order against CBW, the constitutional injury will likely be irremediable.  The Supreme Court has stated that those subject to an unconstitutional proceeding by improperly insulated administrative agency officials often have no retrospective redress after the fact.  *See Collins*, 141 S. Ct. at 1787–89.

117.     The harm to CBW, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the FDIC if such relief is granted.

118.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## PRAYER FOR RELIEF

**WHEREFORE**, CBW hereby requests that the Court order the following relief and enter a judgment:

1.     Declaring that:

   a.     The statutes, regulatory provisions, guidance, and/or policies restricting the removal of OFIA ALJs, including [], are unconstitutional;

   c.     The FDIC proceedings against CBW deprive it of its constitutional right to trial by jury in an Article III court; and

2.     Preliminarily enjoining Defendants from subjecting CBW to an unconstitutional administrative proceeding without an Article III jury pending the final resolution of this action;

3.     Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above in this action;

4.      Permanently enjoining the FDIC Defendants from adjudicating allegations relating to the same underlying set of events as any action against CBW that they authorize unless adjudicated in an Article III court with a jury;

5.      Awarding CBW its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

6.      Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: November 19, 2024                    Respectfully submitted,

**BERKOWITZ OLIVER LLP**

*/s/ Anthony J. Durone*
Anthony J. Durone (KS Bar # 17492)
Carson M. Hinderks (KS Bar # 25079)
2600 Grand Boulevard, Suite 1200
Kansas City, MO  64108
Telephone: 816.561.7007
Fax:  816.561.1888
adurone@berkowitzoliver.com
chinderks@berkowitzoliver.com

**MORGAN LEWIS & BOCKIUS LLP**

Allen H. Denson (*pro hac vice* forthcoming)
D.C. Bar No.: 999210
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
allen.denson@morganlewis.com
Tel: (202) 739-3000
Fax: (202) 739-3001

Daniel B. Tehrani (*pro hac vice* forthcoming)
N.Y. Bar No.: 4422945
101 Park Ave
New York, NY 10178-0060
daniel.tehrani@morganlewis.com
Tel: (212) 309-6150
Fax: (212) 309-6001

Catherine L. Eschbach (*pro hac vice* forthcoming)
TX Bar No.: 24097665
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
Tel: (713) 890-5719
Fax: (713) 890-5001

*Attorneys for CBW Bank*