UNITED STATES DISTRICT COURT
FOR DISTRICT OF KANSAS

| | |
|---|---|
| **CBW BANK,** a Kansas State Chartered Bank**,**<br><br>**Plaintiff,**<br><br>v.<br><br>The **FEDERAL DEPOSIT INSURANCE CORPORATION**; **JENNIFER WHANG**, in her official capacity as an ALJ of OFIA; and **C. SCOTT MARAVILLA**, in his official capacity as an ALJ of OFIA,<br><br>**Defendants.** | Case No. 2:24-cv-02535 |

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff CBW ("CBW" or the "Bank") respectfully moves for an order preliminarily enjoining imminent administrative proceedings against CBW, to be entered against the FDIC and the Administrative Law Judge defendants (collectively, "Defendants"). Fed. R. Civ. P. 65(a). The administrative proceeding unconstitutionally deprives CBW of its Seventh Amendment jury rights. CBW needs this Court's intervention now to prevent the irreparable injury of forcing CBW to participate in an unconstitutional administrative process that seeks to impose civil monetary penalties (CMP) in an amount that could imperil the Bank's financial viability. Without the requested relief, CBW will suffer irreparable harm as described below.

## INTRODUCTION

CBW filed this action to avoid serious and irreparable injuries that it will otherwise suffer from being subjected to an unconstitutional administrative proceeding that will deprive it of its Seventh Amendment jury rights. Defendants are prosecuting and about to preside over such a proceeding seeking significant civil monetary penalties. Because that proceeding violates CBW's rights under the United States Constitution, CBW respectfully requests an order enjoining the FDIC from undertaking these proceedings unless and until the constitutional defects are remedied.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). CBW satisfies each of these requirements.

First, CBW is likely to succeed in establishing that the FDIC proceedings violate the Constitution. The FDIC seeks to adjudicate legal claims in in-house administrative proceedings in violation of the Seventh Amendment. The FDIC's pursuit of a CMP requires a jury in an Article III court. This right attaches before any adjudicatory proceeding and irrespective of the ultimate

outcome of the administrative proceeding. The Seventh Amendment right is centered on the "maintenance of the jury as a fact-finding body," *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935), and CBW will be deprived of its Seventh Amendment rights if an ALJ instead sits as a fact-finder here.

"The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). As to that issue, the remedy the FDIC is seeking—civil monetary penalties—is dispositive here. *Id.* at 2129. "[C]ivil penalties are a type of remedy at common law that could only be enforced in courts of law," and actions to collect CMPs were brought at common law as actions in debt requiring a jury. *Id.* (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)) (cleaned up). Thus, the CMPs sought here are legal in nature and CBW has a right to have an Article III jury sit as the fact-finder to determine liability.

Nor does the statutory nature of the CMPs allow them to be tried in an agency proceeding by the FDIC. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency" like the FDIC. *Granfinanciera*, 492 U.S. at 61. The CMPs sought by the FDIC do not fall within the so-called "public rights" exception allowing the claims to be withdrawn from the cognizance of an Article III jury. *See Jarkesy*, 144 S. Ct. at 2131-34.

Second, CBW will be irreparably harmed by these violations of its constitutional rights unless the Court halts the FDIC proceedings. CBW is "entitled under the Seventh Amendment to a jury trial" so "the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings." *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022). CBW is entitled to a constitutional decisionmaker in the first instance. Even if the Court remedies this constitutional defect in its final judgment, it cannot undo the injury CBW will suffer

in the meantime through an unconstitutional proceeding that results in the deprivation of CBW's Seventh Amendment right to have a jury sit as a fact-finder. *See Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019). CBW will also suffer irreparable injuries to its reputational and business interests as the CMP amount the FDIC seeks through the administrative proceeding—as well as the findings made by an unconstitutional fact-finder—will potentially undermine confidence in the Bank.

And finally, for similar reasons, the balance of equities and public interest weigh strongly in CBW's favor.

Under binding Supreme Court precedent, such harm is "a here-and-now injury" that "is impossible to remedy once the proceeding is over," *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023), and this Court has jurisdiction to litigate these collateral constitutional challenges now before those proceedings occur.

Because CBW satisfies the preliminary injunction factors for its four claims, this Court should grant CBW's motion and preliminarily enjoin the FDIC proceedings against it.

## BACKGROUND

CBW is a bank formerly known as Citizens Bank of Weir that was acquired by Suchitra Padmanabhan and her husband, Suresh Ramamurthi, during the 2008 global financial crisis. It is a single-branch, Kansas state-chartered bank headquartered in Weir, Kansas.

The FDIC has moved to assess a CMP against CBW for years-old conduct that occurred in the Bank's since-abandoned correspondent banking and money services businesses for violations of the Bank Secrecy Act and CBW's anti-money laundering ("AML") compliance obligations. However, the FDIC conducted regular examinations of the Bank's AML compliance program and, during this routine oversight, there was no evidence to suggest the Bank or any Bank employee

engaged in any deliberate misconduct, or recklessly or willfully disregarded any AML duty associated with the Bank's compliance program. The Bank has always operated in good faith, taking swift action to address the FDIC's concerns.

Despite this, the FDIC continues to pursue a penalty assessment against the Bank in connection with a supervisory visit in 2019. The penalty sought by the FDIC, is unreasonable and unprecedented for a bank of this size, complexity, and supervisory history. There is no justifiable basis for any CMP, let alone one of the threatened magnitude given the conduct at issue in this case.

On November 18, 2022, CBW received a 15-day notice regarding the FDIC's consideration of potential civil monetary penalties. The parties engaged in good faith settlement negotiations after CBW responded to the notice. CBW's counsel was informed on November 18, 2024, however, that the FDIC plans on November 19, 2024 to issue a notice assessing civil monetary penalties under Section 8(i)(2)(H) of the Bank Secrecy Act. At that time, CBW's counsel was informed by the FDIC that unless CBW agreed to the settlement the FDIC proposed the FDIC would initiate litigation. CBW did not accept the proposed settlement, and on November 19, 2024, the FDIC served CBW with a notice of hearing.

Unless enjoined while this Court adjudicates whether the FDIC can seek the CMP without proceeding before an Article III jury, a hearing will commence before one of the two OFIA ALJs named as Defendants in this matter.[1]

---

[1] Additionally, the FDIC is in possession of CBW's privileged documents and information and has (1) disclaimed the existence of any attorney-client privilege in proceedings involving the FDIC, and (2) refused to return or segregate all documents protected by attorney-client privilege. CBW intends to move for a protective order in the appropriate forum to prevent the FDIC from using the privileged information already learned in their investigations and enforcement proceedings and to disqualify and screen the lawyers who have reviewed the privileged information from further participation in the matter.

**ARGUMENT**

Preliminary injunctive relief is proper when a movant establishes that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir. 2013).

**I.      CBW is likely to succeed on the merits of its Seventh Amendment claim**

The Seventh Amendment preserves the right to trial by jury "[i]n Suits at common law." U.S. Const. amend. VII. The FDIC's effort to adjudicate private rights and afford legal relief, without the safeguards of juries and impartial Article III judges, exceeds constitutional bounds. *Jarkesy*, 144 S. Ct. at 2139. "The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Id.* at 2128 (citation omitted).

To assess this claim, the Court must determine whether (1) the underlying controversy "implicates the Seventh Amendment," and (2) "whether the 'public rights' exception to Article III jurisdiction applies." *Id.* at 2127. "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* at 2128 (*Granfinanciera*, 492 U.S. at 53; *Tull*, 481 U.S. at 417). Whether a claim is "legal in nature" depends on the nature of the cause of action and the nature of the remedy, but the nature of the remedy is "more important." *Id.* at 2129 ("the remedy was the 'more important' consideration" (quoting *Tull*, 481 U.S. at 421)). The FDIC proceeding against CBW involves claims that are legal in nature under *Jarkesy*.

Here, "the remedy is all but dispositive." *Jarkesy*, 144 S. Ct. at 2129. "What determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer." *Id.* In this case, the FDIC's threatened sanction, which is based entirely on its unfounded allegations that

CBW's AML program was not reasonably designed, "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." *Id.* (quoting *Austin v. United States*, 509 U.S. 602, 610 (1993)). It is therefore punishment. *Id.* "[O]nly courts of law issued monetary penalties" and "civil penalties are a type of remedy at common law that could only be enforced in courts of law." *Id.* (quoting *Tull*, 481 U.S. at 422) (cleaned up).

There is no basis for the FDIC to claim the CMPs it can impose under 12 U.S.C. § 1818(i)(2)(A)-(C) are equitable as opposed to legal. Like the SEC penalty scheme in *Jarkesy*, here, Section 8(i) "establish[es] three 'tiers' of civil penalties" and "[e]ach tier conditions the available penalty on the culpability of the defendant and the need for deterrence, not the size of the harm that must be remedied." *Id.* No "showing that a victim suffered harm" is "required to advance a defendant from one tier to the next," so nothing in the "analysis turns on restoring the status quo." *Id.* at 2130 (quoting *Tull*, 481 U.S. at 422). Nor is there any provision in Section 8(i) for the return of any funds collected to putative victims; the FDIC's imminent penalty assessment is purely designed to punish the Bank for alleged statutory violations and has no restitutionary component. *See id.*; 12 U.S.C. § 1818(i). Thus, *Jarkesy* controls the outcome. The remedies at issue here are necessarily legal in nature, which is essentially dispositive of the Seventh Amendment jury right attaching under *Jarkesy*. *See also Tull*, 481 U.S. at 424 (where CMPs have no restitutionary purpose a jury is required).

This conclusion is reinforced by the fact that "[a]ctions by the Government to recover civil penalties under statutory provisions . . . historically ha[ve] been viewed as a type of action in debt requiring trial by jury." *Jarkesy*, 144 S. Ct. at 2129 (quoting *Tull*, 481 U.S. at 418-19). As *Tull* explained, "[p]rior to the enactment of the Seventh Amendment, English courts had held that a

6

civil penalty suit was a particular species of an action in debt that was within the jurisdiction of the courts of law." 481 U.S. at 418 (citing *Atcheson v. Everitt*, 1 Cowper 382, 98 Eng.Rep. 1142 (K.B. 1776); *Calcraft v. Gibbs*, 5 T.R. 19, 101 Eng.Rep. 11 (K.B. 1792)). After passage of the Seventh Amendment, "federal courts followed this English common law in treating the civil penalty suit as a particular type of an action in debt, requiring a jury trial." *Id.* The Supreme Court in *Jarkesy* adopted *Tull*'s statement that "the statutory nature of the claim was not legally relevant," and reiterated that actions for civil monetary penalties were considered actions in debt to which the Seventh Amendment jury right attached. *Jarkesy*, 144 S. Ct. at 2129.

Under this framework, a Texas district court has already concluded that an FDIC proceeding for CMPs is a legal claim that requires a jury trial in an Article III court. *See Burgess*, 639 F. Supp. 3d at 748. This Court should conclude likewise.

The "public rights exception" provides no support for the FDIC's ability to evade the Seventh Amendment jury trial guarantee. This exception allows certain claims to be withdrawn from the cognizance of an Article III jury where they "historically could have been determined exclusively by the executive and legislative branches." *Jarkesy*, 144 S. Ct. at 2132 (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)). The FDIC, however, bears the burden of showing the public rights exception applies. It cannot carry this heavy burden. *See id.* ("If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory.").

After all the "public rights" exception is "an *exception*." *Id.* at 2134 (emphasis in original). "It has no textual basis in the Constitution and must therefore derive instead from background legal principles." *Id*. When this exception applies, it often flows from "from centuries-old rules." *Id.* at 2133-34 (discussing sovereign collection of debts, Indian tribes, immigration penalties, tariffs,

and administration of certain public benefits); *id.* at 2147 (Gorsuch, J., concurring) ("Whatever their roots, traditionally recognized public rights have at least one feature in common: a serious and unbroken historical pedigree."). And "[e]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts." *Id*. at 2134 (cleaned up).[2]

Here, there is no long-rooted historic pedigree of these types of claims being determined exclusively by the executive or legislative branches, so the public rights exception cannot apply. Moreover, it cannot be said that the public rights exception applies given that the statutory scheme expressly contemplates that the regulatory provisions have both public and private benefits. As the Supreme Court emphasized in *Jarkesy*, "matters concerning private rights may not be removed from Article III courts." *Id.* at 2132. Congress made very clear in imposing AML obligations for regulated financial institutions that, while there was some public interest, "[f]inancial institutions are spending private compliance funds for a public *and private benefit*." 31 U.S.C. § 5318(h)(2)(B)(i) (emphasis added).

Further, the statute requires these AML programs, which are funded by private monies, to be "reasonably designed" and "risk based" "directed toward higher-risk customers and activities" and "consistent with the risk profile of a financial institution." *Id.* § 5318(h)(2)(B)(iv)(I)-(II).[3]

---

[2] Notably the Supreme Court did not list *Atlas Roofing Co., Inc. v. OSHRC*, 430 U.S. 442, 453 (1977), among the litany of public rights cases firmly rooted in historical precedent, *Jarkesy*, 144 S. Ct. at 2131-34, and indicated it had likely been overruled by *Tull* and *Granfinanciera*. *See id.* at 2137 nn. 3 & 4. And if it had not been previously overruled, Justice Sotomayor in her dissent forcefully argued that *Atlas Roofing* was irreconcilable with the majority opinion. *See id.* at 2165 (Sotomayor, J., dissenting). Given the presumption is in favor of the Article III jury right, this exclusion warrants extreme caution regarding any further expansion of the public rights exception.

[3] Requiring in full: that the program be "(I) reasonably designed to assure and monitor compliance with the requirements of this subchapter and regulations promulgated under this subchapter; and (II) risk-based, including ensuring that more attention and resources of financial institutions should be directed toward higher-risk customers and activities, consistent with the risk profile of a financial institution, rather than toward lower-risk customers and activities."

8

These are statutory obligations more akin to traditional common law standards of reasonableness found in negligence actions. *See, e.g.*, Joseph W. Glannon, The Law of Torts: Examples and Explanations 70 (3d ed. 2005); Prosser & Keeton on the Law of Torts § 32 at 174 (W. Page Keeton ed., 5th ed. 1984) (the reasonable person is one who acts with "ordinary prudence, . . . reasonable prudence, or some other blend of reason and caution"); Restatement (Second) of Torts § 283 (1965) (to avoid negligence liability one must act as a "reasonable man under like circumstances"); *Blyth v. Birmingham Waterworks Co.*, 156 Eng. Rep. 1047, 1049; 11 Ex. 781 (1856) (Alderson, B.) ("Negligence is the omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do."). Moreover, although the administrative complaint takes pains to avoid stating exactly which provision of 1818(i)(2) it is using to calculate the CMP, here the administrative complaint expressly alleges that "[CBW] recklessly engaged in unsafe or unsound practices" which mirrors the language of 1818(i)(2)(B). Necessarily then, based on this language and the amount of the CMP in the notice, FDIC alleges that CBW either acted recklessly and/or breached fiduciary duties, which both sound in common law tort. *See* Geoffrey Christopher Rapp, The Wreckage of Recklessness, 86 Wash. U.L. Rev. 111 (2008) ("'Recklessness' is one of the oldest concepts in Anglo-American tort law"); David J. Seipp, Trust and Fiduciary Duty in the Early Common Law, 91 B.U. L. Rev. 1011, 1013-16 (2011).

This statutory scheme is fundamentally different from the OSHA statutory scheme in *Atlas Roofing*, which carried no "common law soil" and instead was comprised of, among other things, technical instructions directing the construction of "ground trench walls," specifying building materials, and identifying the precise angle and slope of construction for the various walls. *Jarkesy*, 144 S. Ct. at 2137 (describing the unique facets of the OSHA scheme at issue in *Atlas*

9

*Roofing*). As the Supreme Court stated in *Jarkesy*, the OSHA provisions at issue in *Atlas Roofing* did not "reiterate common law terms of art, they instead resembled a detailed building code." *Id.* Whereas here, the alleged violations underlying the FDIC's action for CMPs draw on "common law terms of art" and the statutory scheme acknowledges that it involves the expenditure of private property—the financial institution's funds—to set up a "reasonable" anti-money laundering scheme to protect both private and public interests. Punishments are then imposed based on allegations of "reckless" conduct or breach of fiduciary duties, both also long-standing common law concepts. Accordingly, the claims fall outside the limited public rights exception and squarely within the category of claims to which the Seventh Amendment jury guarantee applies.

## II.   CBW will face irreparable harm absent a preliminary injunction.

Unless this Court enjoins the FDIC from pursuing CMPs against CBW through an administrative proceeding without a jury, CBW will suffer multiple forms of irreparable harm: (1) CBW will be deprived of its Seventh Amendment right to have a jury as a fact-finder; (2) it will have been subjected to an unconstitutional administrative proceeding and the simple fact of being made to participate in that proceeding in violation of its constitutional rights causes harm; and (3) CBW will suffer economic and reputational harms that result from the unconstitutional proceeding. CBW seeks to prevent the FDIC from proceeding with adjudicating liability for CMPs unless and until the FDIC can provide an Article III forum with a jury as CBW is guaranteed by the Seventh Amendment.

As a matter of law, the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Free the Nipple*, 916 F.3d at 806 ("Any deprivation of any constitutional right fits that bill."). A Seventh Amendment jury-trial right attaches before the start of a proceeding. *See* U.S. Const. amend. VII; *cf.* Fed. R. Civ. P. 38,

39 (procedures for preserving Seventh Amendment jury right before trial).  Thus, the question is who should sit as factfinder, regardless of the outcome, other decisions made in the case, or whether and in what amount CMPs are awarded, as the right is centered on the "jury [acting] as a fact-finding body." *Dimick*, 293 U.S. at 486.  Parties are entitled "to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages.  Both are questions of fact." *Id.*

Here, CBW has a right to have a jury in an Article III court and not an ALJ act as the fact-finder in determining whether it is liable for CMPs.  As a result, this is not a mere separation of powers challenge, but one that implicates an individual right to a jury guaranteed by the Seventh Amendment.  *See Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 755 (10th Cir. 2024) (although a separation of powers challenge alone does not create a per se irreparable injury, where individual rights are implicated irreparable harm occurs).  Because CBW is "entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings." *Burgess*, 639 F. Supp. 3d at 749.

The deprivation of CBW's right to a jury in the FDIC proceedings is itself a concrete injury inflicting a specific and irreparable harm that cannot later be remedied by vacating the ALJ's order and requiring a re-do of the proceeding in a manner that complies with the constitution; CBW is entitled to a constitutionally compliant decisionmaker in the first instance.  *See Ward v. Village of Monroeville*, 409 U.S. 57, 61-62 (1972) (a flawed adjudicative process cannot "be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance").  The harm results from participation in the unconstitutional hearing itself and not from any particular decision made by the unconstitutional decisionmaker.

Finally, undergoing an unconstitutional agency proceeding will result in reputational, legal, and economic harms to CBW. "What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial." *Free the Nipple*, 916 F.3d at 806. Here, the FDIC is seeking a significant CMP. The Bank will similarly never recover the costs of defending itself or the reputational harm it would suffer should an unconstitutional fact-finder find against it and award CMPs in the amount the FDIC seeks. Given the sensitivity of banks to reputational harm, even if any CMP were eventually vacated and CBW were to receive a jury trial in an Article III court, it would likely be too late to undo the significant harm inflicted by the unconstitutional ALJ proceeding. In turn, the reputational harm could undermine the Bank's viability. *See generally* Julie Andersen Hill, *Regulating Bank Reputation Risk*, Ga. L. Rev., Vol. 54 (2020) (explaining that "banks can suffer losses from reputational damage," including injury resulting from damage to the reputation by regulatory action); *cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way."). Moreover, the costs from undergoing the unconstitutional proceeding in the first place— including legal fees and time by Bank personnel preparing for and participating in the unconstitutional fees—are likely unrecoverable. These are not ordinary litigation costs; they are instead costs that would not arise but for participating in and undergoing an agency adjudication that is in and of itself unconstitutional. *See Cochran v. SEC*, 20 F.4th 194, 209 (5th Cir. 2021) (en banc), *aff'd sub nom. Axon*, 598 U.S. 175 (disagreeing with the government that plaintiff complained only about "mere litigation expense[s]" where the plaintiff "challenges the entire legitimacy of [the] proceedings, not simply the cost and annoyance").

For all these reasons, the Bank would suffer irreparable harm if deprived of its Seventh Amendment rights and subjected to an unconstitutional agency proceeding.

**III.    The balance of harms and public interest favor a preliminary injunction.**

CBW satisfies the two remaining preliminary injunction factors as well.  Where, as here, the government is a defendant, the balance of harms and the public interest factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Both factors tilt strongly in favor of the Bank.  Given its likelihood of success on the merits, an injunction would not harm Defendants because the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action."  *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g.*, *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012).  Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, 100 F.4th 1251, 1274 (10th Cir. 2024).

\*\*\*\*\*\*

CBW has carried its burden on all four factors to show a clear and indisputable right to a preliminary injunction to preserve the status quo until final judgment on the merits can be rendered.

**IV.    There is jurisdiction to consider CBW's claims at this juncture.**

There is jurisdiction for this Court to consider this claim because the Seventh Amendment claim is wholly collateral to the administrative proceedings.

*Thunder Basin* holds there is jurisdiction if: (1) failing to consider the claim would foreclose "meaningful judicial review"; (2) the claim is "wholly collateral to the statute's review provisions"; and (3) the claim is "outside the agency's expertise."  *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994).  All three factors are met on the Seventh Amendment claim.

First, in this type of challenge, the question is who should sit as factfinder, regardless of the outcome, other decisions made in the case, or whether damages are in fact awarded.  *See*

13

*Dimick*, 293 U.S. at 486 (the right is centered on the "jury [acting] as a fact-finding body"); *see also Axon*, 598 U.S. at 191-92. This is the same scenario as *Axon*: at least part of the right would be "effectively lost" if review was deferred until after trial. 598 U.S. at 191; *see also Burgess*, 639 F. Supp. 3d at 744-45, 749.

Second, CBW is challenging the power of the Board "to proceed at all" when it offers no jury trial right or Article III decisionmaker. *Axon*, 598 U.S. at 192. CBW is not challenging a specific damages award. Nor does CBW's Seventh Amendment claim "address the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." *Id.* at 193. So, as in *Axon*, the collateralism factor favors review. *See id.* at 192-93.

Third, much as in *Axon*, the Board here knows "nothing special about the [Seventh Amendment]." *Id.* at 194. The constitutional claim is not "intertwined with or embedded in matters on which the Commissions are expert." *Id.* at 195. Who sits as the factfinder in this case is an issue of "here-and-now harm" that "would remain no matter how much expertise could be 'brought to bear' on the other issues." *Id.*

For these reasons, other federal courts have agreed that there is jurisdiction to review a Seventh Amendment claim brought as a challenge to an agency proceeding. *See, e.g.*, *Burgess*, 639 F. Supp. 3d at 743-46. The three factors all favor review.

Despite this, the FDIC will likely argue this Court is jurisdictionally barred from reviewing CBW's claims by the anti-injunction provision in 12 U.S.C. § 1818(i)(a). Section 1818(i)(a) provides that: "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order." A Texas federal court already considered and rejected the arguments that this provision either expressly or implicitly precluded consideration of

14

similar constitutional claims, including a claim for a jury proceeding consistent with the Seventh Amendment.  *See Burgess*, 639 F. Supp. 3d at 742-46.  This Court should do likewise.

First, by the provision's plain language, it does not apply to the claims here.  CBW has asked this Court to enjoin proceedings before an ALJ, it has not asked for this Court to enjoin the FDIC from "issu[ing] or enforc[ing]" "any notice or order."  12 U.S.C. § 1818(i)(a).  To the extent the FDIC has the authority to enforce a CMP order or seek other remedies in a constitutionally compliant proceeding, it remains free to do so.  Nor has CBW asked this Court to "review, modify, suspend, terminate, or set aside any such notice or order."  *Id.*

Second, the *Burgess* court explained that Section 1818(i)(a) does not expressly preclude review of a collateral constitutional challenge.  "Where Congress intends to preclude judicial review of constitutional claims, its intent to do so must be clear."  *Webster v. Doe*, 486 U.S. 592, 603 (1988).  The text of a provision must expressly withdraw judicial review of a type of claim, which Section 1818(i)(a) does not do.  It neither directly references other jurisdictional statutes like 28 U.S. § 1331 grant of federal question jurisdiction, nor does it state that it is stripping the federal courts of review of constitutional challenges.  *See Burgess*, 639 F. Supp. 3d at 742 (comparing Section 1818(i)(a) with statutes that stated that "[n]o action against the United States . . . shall be brought under Section 1331 or 1346 of title 28" or that limited judicial review of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions").  Because there is no clear intent by Congress in Section 1818(i)(a) to strip federal courts of jurisdiction to review collateral constitutional claims, there is no express preclusion of review of CBW's constitutional claim it has a Seventh Amendment jury right.

Dated: November 19, 2024  Respectfully submitted,

**BERKOWITZ OLIVER LLP**

*/s/ Anthony J. Durone*
Anthony J. Durone (KS Bar # 17492)
Carson M. Hinderks (KS Bar # 25079)
2600 Grand Boulevard, Suite 1200
Kansas City, MO  64108
Telephone: 816.561.7007
Fax:  816.561.1888
adurone@berkowitzoliver.com
chinderks@berkowitzoliver.com

**MORGAN LEWIS & BOCKIUS LLP**

Allen H. Denson (*pro hac vice* forthcoming)
D.C. Bar No.: 999210
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
allen.denson@morganlewis.com
Tel: (202) 739-3000
Fax: (202) 739-3001

Daniel B. Tehrani (*pro hac vice* forthcoming)
N.Y. Bar No.: 4422945
101 Park Ave
New York, NY 10178-0060
daniel.tehrani@morganlewis.com
Tel: (212) 309-6150
Fax: (212) 309-6001

Catherine L. Eschbach (*pro hac vice* forthcoming)
TX Bar No.: 24097665
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
Tel: (713) 890-5719
Fax: (713) 890-5001

*Attorneys for CBW Bank*