**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CBW BANK,

Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, *et al.*,

Defendants.

Case No. 24-cv-2535-DDC-BGS

**FEDERAL DEPOSIT INSURANCE CORPORATION DEFENDANTS'
COMBINED OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND
MOTION TO DISMISS**

FEDERAL DEPOSIT INSURANCE CORPORATION
Andrew Dober
Senior Counsel

Erik Bond
Counsel
Dominique Park
Senior Attorney
3501 Fairfax Drive
Arlington, VA 22226-3500
Tel.: (703) 562-6461
Fax: (703) 562-2477
Email: erbond@fdic.gov
Email: dompark@fdic.gov

DATED: December 20, 2024

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

BACKGROUND ............................................................................................................... 2

    A.   The FDIC.............................................................................................................. 2

    B.   The Bank Secrecy Act ....................................................................................... 2

    C.   FDIC Enforcement Actions and Judicial Review Thereof.................................. 4

    D.   The Enforcement Action .................................................................................... 5

ARGUMENT .................................................................................................................... 6

I.    CBW IS UNLIKELY TO PREVAIL ON THE MERITS...................................................... 6

    A.   This Court Lacks Subject-Matter Jurisdiction............................................ 6

        1.   Section 1818(i)(1) Prohibits Interference with the FDIC's Enforcement Proceeding. ..................................................................................................... 6

    B.   CBW Cannot Prevail on the Seventh Amendment Claim......................................... 11

        1.   The FDIC's Enforcement Proceedings Address Matters Unique to the Sovereign..................................................................................................... 11

        2.   Actions to Enforce the BSA Are Not Rooted in the Common Law........... 14

    C.   CBW's Challenge to ALJ Removability is Foreclosed by Supreme Court and Tenth Circuit Case Law................................................................................... 16

II.   CBW CANNOT SHOW IRREPARABLE HARM. ........................................................... 17

III.  THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST DO NOT FAVOR AN INJUNCTION. ................................................................................... 19

IV.  A SUBSTANTIAL BOND WOULD BE WARRANTED. ................................................. 20

CONCLUSION................................................................................................................ 20

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Last month, the Federal Deposit Insurance Corporation ("FDIC") initiated an administrative enforcement action against CBW Bank ("CBW" or the "Bank") for allegedly failing to maintain an adequate Anti-Money Laundering/Countering the Financing of Terrorism ("AML/CFT") compliance program, including repeated violations of the Bank Secrecy Act ("BSA"). The FDIC alleges, among other things, that CBW operated a multi-billion-dollar international money transfer business, including repatriating hundreds of millions of dollars in bulk cash shipments from Mexico, with inadequate AML/CFT controls. *See* Notice of Charges ("NOC") at ¶¶ 6, 28 (attached hereto as Exhibit A). The FDIC further alleges that CBW earned millions while running an illusory AML/CFT compliance program and seeks a $20.448 million civil money penalty ("CMP"). In the administrative case, CBW is entitled to discovery, a hearing before an administrative law judge ("ALJ"), an appeal of the ALJ recommended decision to the FDIC Board of Directors, and appellate review of any final FDIC administrative determination from either the Tenth or D.C. Circuit. 12 U.S.C. § 1818(h). This lawsuit is an improper collateral attack on that statutory process.

Congress made clear that "no court shall have jurisdiction to affect by injunction or otherwise" an FDIC enforcement proceeding. 12 U.S.C. § 1818(i)(1). Section 1818(i) bars this Court from issuing the injunctive and declaratory relief that plaintiff CBW seeks. This statutory bar does not evaporate because CBW claims entitlement to a Seventh Amendment jury trial. CBW can raise its Seventh Amendment arguments in the administrative proceeding itself and then in either the Tenth Circuit or D.C. Circuit. What CBW cannot do is short circuit that process altogether by obtaining injunctive and declaratory relief here. Because 12 U.S.C. § 1818(i) is an explicit withdrawal of jurisdiction, and because it has long been settled that such withdrawals are

1

permissible as long as review is afforded—which it is, in the appropriate court of appeals—the Court lacks subject matter jurisdiction. As is discussed herein, the U.S. Supreme Court's decision in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024) does not change this. Consequently, this case should be dismissed in its entirety. The two claims in this case also fail on 12(b)(6) grounds. There is no jury trial right in a FDIC enforcement proceeding (Count I) and CBW's challenge to the ALJ's removability (Count II) is foreclosed by the recent decision in *Leachco v. CPSC*, 103 F.4th 748 (10th Cir. 2024). Lastly, even if jurisdiction existed and the claims were viable, the alleged denial of a jury trial right does not constitute irreparable injury under binding case law as it can be remedied on appeal.

## BACKGROUND

### A.    The FDIC

Congress established the FDIC in 1933, in response to an epidemic of bank closures, seeking to restore confidence in the nation's banking system by creating a system of deposit insurance. *See* 12 U.S.C. §§ 1811, 1819. Subsequent legislation expanded the FDIC's role in regulating and stabilizing banks. *See, e.g.*, Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (Aug. 9, 1989). The FDIC serves as, among other things, a regulator for certain state-chartered banks, including CBW, which is located in Weir, Kansas. *See* 12 U.S.C. §§ 1817(a), 1819, 1820(b).

### B.    The Bank Secrecy Act

The BSA, also known as the Currency and Foreign Transactions Reporting Act, was enacted in 1970. Pub. L. 91-508 (Oct. 26, 1970); *see* 31 U.S.C. § 5311 *et seq*. To combat international money laundering, that statute requires insured banks to file currency reports with the Treasury Department, identifying the persons involved, and maintain records of such transactions. *See* 12 U.S.C. § 1829b. The Money Laundering Control Act of 1986, Pub. L. 99-570

(Oct. 27, 1986), strengthened the BSA by, *inter alia*, requiring banking agencies to create procedures "reasonably designed to assure and monitor the compliance of . . . depository institutions" with the BSA. 12 U.S.C. § 1818(s). Among other things, a bank's internal compliance program must be "risk-based, including ensuring that more attention and resources" of a bank are "directed towards higher-risk customers and activities, consistent with" a particular bank's risk profile. 31 U.S.C. § 5318(h)(2)(B)(iv).

In response to the 1986 Act, the FDIC promulgated, among other regulations, 12 C.F.R. § 326.8, which requires FDIC-supervised banks to develop internal procedures to ensure "compliance with recordkeeping and reporting requirements set forth in [the BSA] and the implementing regulations issued by the Department of Treasury at 31 C.F.R. Chapter X." *Id.* § 326.8(b). A bank's internal BSA compliance program must, *inter alia*, "[p]rovide for a system of internal controls to assure ongoing compliance" and "designate an individual . . . responsible for coordinating and maintaining day-to-day compliance." *Id.* § 326.8(c). Treasury also promulgated regulations implementing this requirement. *See, e.g.*, 31 C.F.R. § 1010.610 (banks must "establish a due diligence program …to detect and report . . . any known or suspected money laundering activity conducted through or involving any correspondent account . . . for a foreign financial institution").

Congress again amended the BSA in 1992, passing the Annunzio-Wylie Anti-Money Laundering Act, which requires financial institutions to "report any suspicious transaction relevant to a possible violation of law or regulation" to an agency designated by Treasury. 31 U.S.C. § 5318(g)(1), (4). Regulations implementing this requirement were promulgated at 12 C.F.R. § 353.3 and 31 C.F.R. § 1020.320. Treasury designated the Financial Crimes Enforcement Network ("FinCEN") as the required recipient of Suspicious Activity Reports ("SARs"). Treasury

Order 150-08 (Apr. 26, 1990).

### C.    FDIC Enforcement Actions and Judicial Review Thereof

The FDIC, under Section 8 of the Federal Deposit Insurance Act ("FDI Act"), can bring

enforcement actions against institutions that engage in unsafe and unsound practices or that

violate laws or regulations. *See, e.g.*, 12 U.S.C. § 1818(b) (cease-and-desist proceedings); §

1818(c) (temporary cease-and-desist orders); § 1818(e) (removal and prohibition authority); and §

1818(i)(2) (CMPs). If it becomes necessary to initiate an enforcement action, the FDIC issues a

Notice of Charges setting out the facts that constitute the alleged violation or unsafe or unsound

practice. *See id*. § 1818(b)(1).  The case is then assigned to an ALJ who conducts the

proceedings in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–

706, and the FDIC's Rules of Practice and Procedure, 12 C.F.R. Part 308. Under the FDIC's

Rules, the ALJ has all powers necessary to conduct a proceeding in accordance with the

provisions of the APA. This includes handling scheduling, issuing subpoenas, overseeing

discovery, ruling on procedural matters, receiving documentary and testimonial evidence, and

making evidentiary rulings on admissibility. 12 C.F.R. §§ 308.533, 308.517.

Within 45 days after the expiration of time allowed for the filing of post-hearing

submissions, the ALJ must issue a recommended decision and file with the FDIC's

Administrative Officer the complete administrative record of the proceeding, including

recommended findings of fact, recommended conclusions of law, and a proposed order. *See* 12

C.F.R. § 308.38. The parties may file exceptions to the ALJ's recommended decision within 30

days of its issuance. 12 C.F.R. § 308.39. After the deadline passes for filing exceptions and the

record is complete, the case is transmitted to the FDIC Board for a final decision within 90 days.

*See* 12 C.F.R. § 308.40.

Once the Board issues its final decision, the respondent may, within 30 days, appeal the

Board's final decision to either the D.C. Circuit or to the circuit where the bank's home office is located, here the Tenth Circuit. *See* 12 U.S.C. § 1818(h)(2). A collateral attack does not give rise to a stay, *see* 12 C.F.R. § 308.17, but the FDIC Board may elect to stay any order it issues pending judicial review. *See* 12 C.F.R. § 308.41. The court of appeals reviews the Board's final decision under the APA. *See* 12 U.S.C. § 1818(h)(2); *accord Michael v. FDIC*, 687 F.3d 337, 348 (7th Cir. 2012).

As noted above, Congress has prohibited district courts from interfering with agency enforcement proceedings:

> [E]xcept as otherwise provided in this section or under section 1831o or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.

*Id*. § 1818(i)(1).

### D.    The Enforcement Action

The FDIC has commenced an administrative enforcement action against CBW for allegedly failing to, among other things, maintain an adequate AML/CFT compliance program and adequate internal controls, which led to multiple incidents where CBW violated the BSA. The NOC, filed November 19, 2024, alleges, among other things, that CBW did not maintain an adequately risk-based internal control system or a sufficient customer due diligence program, and that its BSA officers lacked the experience, authority, independence, resources, and training necessary to implement an adequate compliance program. *Id.* ¶¶ 6, 20-27, 56-58, 65-82. These deficiencies led CBW to repatriate hundreds of millions of dollars in bulk cash shipments from Mexico, with wholly inadequate AML/CFT controls. NOC ¶¶ 6, 20-28. CBW also processed over $27 billion in wire transactions for foreign institutions in Mexico, Lebanon, Brazil, and Cyprus, again with insufficient controls to detect suspicious activity. *Id.* ¶¶ 36-49. Furthermore, CBW

5

failed to file hundreds of SARs with FinCEN when CBW knew or should have known that the

transactions it was processing were derived from illegal activities, in violation of 12 C.F.R.

§ 353.3 and 31 C.F.R. § 1020.320. NOC ¶¶ 83-86. The FDIC seeks a $20.448 million CMP. NOC

at 22.

**ARGUMENT**

To obtain a preliminary injunction, CBW must show: "(1) a substantial likelihood of

success on the merits; (2) irreparable injury if the injunction is denied; (3) the threatened injury

outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the

injunction, if issued, would not be adverse to the public interest." *Leachco, Inc. v. CPSC*, 103

F.4th 748, 752 (10th Cir. 2024) ("As a preliminary injunction is an extraordinary remedy, the

right to relief must be clear and unequivocal.").

**I.    CBW IS UNLIKELY TO PREVAIL ON THE MERITS.**

**A.    This Court Lacks Subject-Matter Jurisdiction.**

**1.    Section 1818(i)(1) Prohibits Interference with the FDIC's Enforcement Proceeding.**

"[N]o court [has] jurisdiction to affect by injunction or otherwise the issuance" of

enforcement orders or to "review" or "modify" the same. 12 U.S.C. § 1818(i)(1). Section 1818(i)

divests this Court of authority to issue relief interfering with the FDIC's enforcement proceeding,

and there is no question that CBW's requested injunctive and declaratory relief would interfere

with the administrative case. As such, there is no subject-matter jurisdiction, and dismissal under

Rule 12(b)(1) is warranted.

a.    <u>The Case Law Shows Section 1818(i)(1) Means What it Says.</u>

Federal courts have subject-matter jurisdiction to review or affect FDIC enforcement

actions in only three circumstances. First, Congress granted the FDIC and other federal banking

6

agencies permission to petition district courts for "the enforcement of any effective and outstanding notice or order issued [to an insured bank]" pursuant to Section 8 proceedings. 12 U.S.C. § 1818(i)(1). Second, district courts have jurisdiction to review challenges by bank directors and Institution Affiliated Parties ("IAPs") to the FDIC's temporary suspension of deposit insurance, an agency's issuance of an emergency temporary cease and desist order, or a temporary suspension of an IAP while a proceeding is pending. *Id*. § 1818(a)(8)(D), (c)(2), (f). Third, the courts of appeals are vested with exclusive jurisdiction to review final agency orders. *See id*. § 1818(h)(2).

Outside these specifically delineated circumstances, federal courts lack subject-matter jurisdiction to interfere with FDIC enforcement proceedings. Section 1818(i)(1) provides that (with exceptions not relevant here) "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of ***any*** notice or order under [section 1818], or to review, modify, suspend, terminate, or set aside any such notice or order." 12 U.S.C. § 1818(i)(1) (emphasis added). In *Board of Governors v. MCorp Financial Inc.*, 502 U.S. 32 (1991), a bank holding company petitioned a district court for an injunction barring the Board of Governors of the Federal Reserve System from continuing to pursue an administrative enforcement action against the company. *Id.* at 36. The Supreme Court cited § 1818(i)(1), calling its language "plain" and "preclusive," *id.* at 38, and explained that "the statute provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the [Federal Reserve] Board's ongoing administrative proceedings." *Id.* at 44.

The Tenth Circuit and many other courts have held that Section 1818(i)(1) means what it says. *See, e.g.*, *Henry v. OTS*, 43 F.3d 507, 512-13 (10th Cir. 1994) (section 1818(i)(1) divests district courts of jurisdiction to review OCC consent order); *Ponte v. FDIC*, 673 F. Supp. 3d 145

(D.R.I. 2023) (no subject matter jurisdiction to issue relief affecting FDIC enforcement case);

*Ponte v. FDIC*, 24-cv-2379 (APM), 2024 WL 4730602, *8 (D.D.C. Oct. 11, 2024) ("*Ponte II*")

(denying request to enjoin enforcement proceeding based on Seventh Amendment challenge);

*Bonan v. FDIC*, 23-cv-8 (HEA), 2023 WL 156852, at *4 (E.D. Mo. Jan. 11, 2023) (same).[1] In

*Henry,* the Tenth Circuit affirmed the dismissal of a district court challenge to administrative

consent orders, rejecting the argument that § 1818(i)(1)'s jurisdictional bar is limited to actions

seeking to challenge "orders . . . issued after an administrative hearing." 43 F.3d at 512. The

court found that Congress had created a "comprehensive scheme for judicial review" that

funneled all challenges to the court of appeals and precluded district court jurisdiction. *Id.* at 513.

*Henry* forecloses CBW's argument that § 1818(i)(1) does not apply because CBW is not

seeking to "review, modify, suspend, terminate or set aside any such notice or order." Mot. at 15

(quoting 12 U.S.C. § 1818(i)(1)). That the requested preliminary relief would "suspend" the

proceeding is obvious, and a permanent injunction would just as obviously "terminate" it. If the

administrative case is enjoined, there is no statutory grant authorizing the FDIC to refile the

notice in federal district court. Just as the requested relief in *Henry* amounted to impermissibly

"setting aside the consent orders," *id.*, CBW would have this Court effectively set aside the

Notice of Charges. This Court should decline CBW's invitation to contravene the language of

---

[1] *See also, e.g.*, *Bank of Louisiana v. FDIC*, 919 F.3d 916, 924 (5th Cir. 2019) ("[I]f the general section 1818 scheme were not enough to show Congress' preclusive intent, the jurisdictional bar in section 1818(i)(1) ices the cake."); *Sinclair v. Hawke*, 314 F.3d 934, 941 (8th Cir. 2003) (noting that "courts have no jurisdiction to enjoin enforcement actions"); *Hindes v. FDIC*, 137 F.3d 148, 165 (3d Cir. 1998) ("[S]ection 1818(i)(1) precludes the declaratory and injunctive relief sought here."); *Board of Governors v. DLG Fin. Corp.*, 29 F.3d 993, 999 (5th Cir. 1994) ("§ 1818(i)(1) divested the district court of jurisdiction to enjoin the commencement of the Board's administrative enforcement."); *Greenberg v. OCC*, 938 F.2d 8, 11-12 (2d Cir. 1991) ("[T]he circumstances of the instant case require adherence to the normal requirement of exhaustion of administrative procedures. That is the obvious purport of section 1818(i)(1)."); *Abercrombie v. OCC*, 833 F.2d 672, 675 (7th Cir. 1987) ("According to § 1818's plain language, the district court simply had no jurisdiction to enjoin the administrative proceedings."); *Ridder v. OTS*, 146 F.3d 1035, 1039 (D.C. Cir. 1998) (no district court jurisdiction to review enforcement rulings outside exception for temporary cease and desist orders).

Section 1818(i)(1). *See Ponte II*, 2024 WL 4730602 at *9.

          b.    <u>CBW's Arguments Cannot Overcome Section 1818(i)(1)'s Explicit</u>
                  <u>Jurisdictional Bar.</u>

CBW cites *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), for the proposition that § 1818(i)(1) should not bar district court jurisdiction where a litigant brings a constitutional challenge, Mot. at 13-14, but that argument has no merit. The recent Supreme Court decision in *Axon* makes clear that the *Thunder Basin* test does not apply where Congress has explicitly withdrawn jurisdiction from the federal courts. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). Indeed, Justice Gorsuch cited § 1818(i)(1) as an example of such an express withdrawal, noting that nothing like that was at issue in *Axon*. 598 U.S. at 208 (Gorsuch, J., concurring in the judgment). He explained that when Congress wants to expressly withdraw jurisdiction, "it does not ask us to juggle a variety of factors and then guess at the implicit intentions of legislators past[,]" rather, "[i]t simply tells us. ***See, e.g.*, 12 U. S. C. § 1818(i)(1)**." (Emphasis supplied.) Where Congress has spoken explicitly on the subject by withdrawing district courts' jurisdiction to hear certain claims, there is no need to deploy the *Thunder Basin* factors to discern Congress's intent; courts instead apply the statutory language divesting jurisdiction as written. *See Bohon v. FERC*, 92 F.4th 1121 (D.C. Cir. 2024); *Ponte v. FDIC*, 2023 WL 6441976, at *2 (D.R.I. Oct. 3, 2023) ("*Ponte I*") (declining to apply *Thunder Basin* and holding Section 1818(i) precluded district court review of all claims, constitutional or otherwise); *Ponte II*, 2024 WL 4730602, at *7 (same); *Moats v. NCUA*, No. 3:23-CV-147, 2024 WL 1724271, at *4 (S.D. Tex. Apr. 9, 2024) (same concerning identical statutory language).

CBW's argument that Section 1818(i)(1)'s bar does not apply because the statute does not "expressly preclude review of a collateral constitutional challenge" rests on one out-of-circuit district court decision. Mot. at 15 (citing *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex.

2022)). *Burgess* was incorrectly decided, as recognized by multiple courts. *See Bonan*, 2023 WL 156852, at \*4; *Moats,* 2024 WL 1724271, at \*3 n.3.[2] In particular, Congress was not required to mention "collateral constitutional challenges" specifically to withdraw jurisdiction; nothing in *Axon* suggests that it needed to, and indeed courts have found such withdrawals of jurisdiction to hear constitutional claims without such magic words on many occasions. *See, e.g.*, *Bank of Louisiana*, 919 F.3d at 924 (§ 1818(i)(1) withdraws jurisdiction over separation of powers challenge); *OTS v. Paul*, 985 F. Supp. 1465, 1474 (S.D. Fla. 1997) (same as to Appointments Clause). Similar decisions as to other statutes abound.[3] In none of those cases did the statutory language mention "constitutional claims," "structural constitutional claims," or any equivalent.[4]

Finally, CBW's contention that its Seventh Amendment claim would be "effectively lost" if this court did not review it immediately, Mot. at 14, cannot be reconciled with *Jarkesy*. As the court in *Ponte II* noted, the Supreme Court considered the Seventh Amendment issue there only

---

[2] The *Burgess* court's holding that § 1818(i)(1) is not an explicit statutory bar to constitutional claims because it does not mention the Constitution, 639 F. Supp. 3d at 742, cannot be reconciled with the many other statutes that have been read as explicit bars without any such reference, and the lone statute cited in *Burgess* does not establish any sort of pattern. Nor has the conclusion survived Justice Gorsuch's subsequent description of § 1818(i) as an explicit jurisdictional bar. *Axon*, 598 U.S. at 208 (Gorsuch, J., concurring) (citing § 1818(i) as a statute where courts need not "guess at the implicit intentions of legislators"). Equally incorrect was the *Burgess* court's conclusion that withdrawals of jurisdiction are effective only when they explicitly reference other jurisdictional statutes; the Supreme Court has explained that this is not the case. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 468-69 (2007).

[3] *See, e.g.*, *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 10 (2008) (Anti-Injunction Act withdrew jurisdiction over challenge to tax as prohibited by Export Clause); *Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 341 (1990) (Foreign Commerce Clause challenge to state tax must be dismissed); *Alexander v. Americans United Inc.*, 416 U.S. 752, 759 (1974) (Anti-Injunction Act withdraws jurisdiction over First Amendment and Establishment Clause contentions).

[4] CBW suggests, Mot. at 15, that Congress is held to a higher standard of clarity when it "intends to preclude judicial review of constitutional claims," citing *Webster v. Doe*, 486 U.S. 592, 603 (1988), but the Court in *Webster* was addressing a hypothetical *complete* denial of review, not a mere channeling of review to a particular court. *Id.* (showing required for statute "construed to deny *any* judicial forum for a colorable constitutional claim") (emphasis added); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012) ("*Webster*'s standard does not apply where Congress simply channels judicial review of a constitutional claim to a particular court."). There is no such complete denial in this case, and § 1818(i)(1) is more than sufficiently clear to withdraw jurisdiction over CBW's claims. *See also Moats*, 2024 WL 1724271, at \*3 n.3 ("[N]othing in either *Webster* or *Elgin* requires Congress to use such magic words").

after the proceeding concluded, and the Court remanded for further proceedings. 2024 WL 4730602, at *9. Jarkesy's claim was not "effectively lost," and CBW's will not be either.

**B.    CBW Cannot Prevail on the Seventh Amendment Claim.**

Should the Court somehow reach the merits of CBW's Seventh Amendment claim notwithstanding the jurisdictional defect in its complaint, the Court should find that the Bank is unlikely to prevail on the merits, as the FDIC is entitled to adjudicate the case without a jury under the long-established public rights exception. *See SEC v. Jarkesy*, 144 S. Ct. 2117 (2024). Specifically, the public rights exception applies because the FDIC's CMP action addresses governmental prerogatives and defends sovereign interests historically adjudicated without a jury, and implements a statute that has no common-law roots.

**1.    The FDIC's Enforcement Proceedings Address Matters Unique to the Sovereign.**

In *Jarkesy*, the Supreme Court held that SEC securities fraud claims did not concern public rights because they did not fall within a "distinctive area[] involving governmental prerogatives where . . . a matter may be resolved outside of an Article III court, without a jury." 144 S .Ct. at 2127. In contrast, federal banking regulation and Section 1818 enforcement actions directly implicate public funds, as bank failures draw down the Deposit Insurance Fund, *see* 12 U.S.C. § 1821(a)(4), the FDIC has authority to resolve insured institutions' problems in order to protect the Fund, *id.* § 1831o, the FDIC is authorized to backstop the Fund by borrowing from the U.S. Treasury, *id.* § 1824(a), and the protection of bank depositors is guaranteed by the full faith and credit of the United States. *See Zucker v. Rodriguez*, 919 F.3d 649, 655 (1st Cir. 2019). For these reasons, the Ninth Circuit applied the exception, noting that "[t]he purpose of enforcement of the [banking] regulation laws is to safeguard the [banking] industry, the depositors, *and the federal insurance fund*." *Simpson v. OTS*, 29 F.3d 1418, 1423 (9th Cir. 1994)

(emphasis added). The SEC securities-fraud claims at issue in *Jarkesy* had no corresponding implications for federally administered public funds.[5]

Moreover, Congress's comprehensive control of the field supports applying the exception here. The Supreme Court emphasized in *Jarkesy* that "[t]he object of th[at] SEC action [wa]s to regulate transactions between private individuals interacting in a pre-existing market." *Jarkesy*, 144 S.Ct. at 2136. The public rights exception, by contrast, applies when Congress's authority to regulate a field is "so total that no party had a 'vested right'" to act in that area without Congress's approval. *Id.* at 2132 (citations omitted). The latter is true here: Section 1818 claims involve a bank-insurance program created and administered by the federal government, not a "pre-existing market." *See, e.g.*, *Spawn v Western Bank-Westheimer*, 989 F.2d 830, 837 (5th Cir. 1993) ("The Federal Deposit Insurance Act . . . represented a pioneering effort to insure against losses in a market where commercial insurers had feared to tread."). No one had, or has, a "vested right" to operate a federally insured bank. Moreover, the object of a Section 1818 enforcement action is *not* to regulate transactions between private individuals. Rather, it is to regulate federally insured banks and those through whom they act to deter misconduct that puts the financial safety and soundness of those banks—and, therefore, public funds in the Deposit Insurance Fund and the Treasury—at risk.

It is likewise pertinent that FDIC's enforcement actions are part and parcel of a comprehensive regulatory scheme. The Supreme Court instructed in *Jarkesy* that, when determining if the public-rights doctrine applies, courts must also "consider[ ] whether the [enforcement] actions [at issue] [are] 'closely intertwined' with the [relevant regulatory]

---

[5] *See also Cavallari v. OCC*, 57 F.3d 137, 145 (2d Cir. 1995) (enforcement proceeding that "stemmed from Cavallari's disregard of an order issued by the OCC pursuant to its regulatory authority under FIRREA . . . implicate[d] public rights"); *Akin v. OTS*, 950 F.2d 1180, 1184, 1186 (5th Cir. 1992) (exception governed proceeding addressing "unsafe or unsound banking practices stemm[ing] from reckless disregard of an institutional officer's duties").

regime." *Jarkesy*, 144 S. Ct. at 2135 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)). The FDIC's action is "closely intertwined" with its responsibility for supervising insured institutions like CBW pursuant to the examination authority set forth in 12 U.S.C. § 1820(b), and with the FDIC's administration of deposit insurance as a general matter. *See, e.g.*, 12 U.S.C. § 1818(i)(2) ("Any insured depository institution which" commits certain violations "shall forfeit and pay a civil penalty . . ."). In other words, when CBW applied for and was granted deposit insurance, it accepted the possibility of enforcement actions in administrative fora, including CMP actions. *Jarkesy* involved no corresponding acceptance of a benefit at the cost of consent to administrative adjudication. And as set forth below, the FDIC's enforcement proceedings (unlike the SEC's) can *only* be brought administratively, demonstrating that, in Congress's view, these proceedings are "closely intertwined" with the FDIC's regulatory regime.

Finally, history supports applying the exception here. The *Jarkesy* Court described public rights as "matters [that] 'historically could have been determined *exclusively* by [the executive and legislative] branches,'" and found it significant that if the SEC could no longer bring administrative actions seeking to impose civil penalties for securities fraud, it could still bring such claims in federal court. As the Court explained, "Congress ha[s] authorized the SEC to bring such actions in Article III courts and still authorizes the SEC to do so today." *Jarkesy*, 144 S.Ct. at 2139. Not so here: preventing the FDIC from bringing enforcement claims seeking CMPs in administrative proceedings would foreclose the agency from bringing such claims at all; Congress has evidently concluded that jury trials would be "incompatible" with the FDIC's enforcement scheme. *Granfinanciera*, 492 U.S. at 61. Consequently, unlike the claims at issue in *Jarkesy*, the FDIC's CMP proceedings have historically been tried "exclusively" in an administrative forum, and requiring jury trials for Section 1818 claims "would 'go far to

dismantle the statutory scheme.'" *Granfinanciera*, 492 U.S. at 61 (quoting *Atlas Roofing Co. v. OSHA*, 430 U.S. 442, 454 (1977)). Hence, the public rights exception applies.

### 2. Actions to Enforce the BSA Are Not Rooted in the Common Law.

There is an independent reason why the FDIC's enforcement of the BSA implicates the public rights exception: such an action is not rooted in "common law soil." *Jarkesy*, 144 S. Ct. at 2137. The *Jarkesy* Court specifically recognized that statutes creating "novel claims" that were "unknown to the common law" fall within the exception, upholding *Atlas Roofing Co. v. OSHA*, 430 U.S. 442 (1977). 144 S. Ct. at 2138; *see also id.* at 2139 (no jury trial required for statutory claims that are not "akin to common law claims"). The BSA is such a statute, as the common law in 1791 had nothing to say about due diligence standards for foreign transactions.

Congress enacted the BSA in 1970, and enhanced it in the following years, in response to concerns about international money laundering and the need for financial institutions to monitor their customers' foreign activities and report suspicious transactions; the FDIC and the Treasury Department have promulgated regulations implementing the BSA's requirements. 12 C.F.R. §§ 1818(s), 1829b; 31 U.S.C. § 5318 *et seq.*; *see, e.g.*, 12 C.F.R. § 326.8(b), (c); 31 C.F.R. §§ 1010.610, 1020.320.[6] This enforcement action arises directly from CBW's violations of the BSA and its implementing regulations, and in particular from CBW's failure to conduct due diligence on its customers and failure to create a compliance system that focused on high-risk customers and countries disproportionately likely to involve suspicious activity, as well as its failure to report questionable transactions to the agency designated for oversight, FinCEN. At the risk of belaboring the obvious, there was nothing resembling any of this in 1791, let alone a

---

[6] *See, e.g.*, H.R. Rep. 91-975, at 10, 12 (Mar. 28, 1970) (in response to a rise in criminal activity using banks as conduits, BSA "requir[es] the maintenance of records by financial institutions in a manner designed to facilitate . . regulatory investigations and proceedings," and prevents "wrongdoers" from "cloak[ing] their activities in the shield of foreign financial secrecy").

common-law action addressing these obligations. There are few statutes whose subject matter is more "unknown to the common law" than the BSA.

CBW unpersuasively argues that the BSA's references to "reasonabl[e] design" and "risk" mean that the BSA incorporated the common law, Mot. at 8-9, but that is incorrect: the substantive standards in the BSA are reporting and internal control requirements, *City of Cambridge Ret. Sys. v. Ersek*, 921 F.3d 912, 915 (10th Cir. 2019), that were created *ex nihilo* and referenced no "common law terms of art." *Jarkesy*, 144 S. Ct. 2137. If references to "reasonableness" and "risk" were by themselves enough to ground a statute in the common law, the Supreme Court would not (in both *Atlas Roofing* and *Jarkesy*) have deemed the Occupational Safety and Health Act "novel" for these purposes, as similar concepts abound in that law.[7]

Moreover, contrary to CBW's assertion, bank officers' negligence in managing their banks was not remediable at common law in 1791; not until the late 19th century did courts begin to impose standards of prudence on bank directors and officers (and those standards arose from the National Banking Act of 1863).[8] Equally unavailing is CBW's reference to actions for breach of fiduciary duty, Mot. at 9, as those were equitable, not legal, in 1791, and were brought against trustees, not corporate officers. *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558 (1990). The concept of unsafe and unsound practices in § 1818 was likewise created by Congress out of whole cloth, and was committed to the banking agencies for development.

---

[7] *See, e.g.*, 29 U.S.C. § 654(a)(1) (Act requires places of employment "free from recognized hazards that are causing or are likely to cause death or serious physical harm . . . ."); *id.* § 665 (Secretary of Labor "may make . . . rules and regulations allowing reasonable variations, tolerances, and exemptions to and from any or all provisions of this chapter").

[8] *See* Patricia A. McCoy, *A Political Economy of the Business Judgment Rule in Banking: Implications for Corporate Law*, 47 Case W. Res. L. Rev. 1, 24-25, 35-36 (1996). Prior to that point, bank officers' and directors' duties to their institutions were defined by the banks' charters and bylaws, not by tort law. *Id.* at 35-36.

*Groos Nat'l Bank v. OCC*, 573 F.2d 889, 897 (5th Cir. 1978). This action therefore rests on statutes that, unlike the securities fraud provision in *Jarkesy*, had no common-law roots.

### C.    CBW's Challenge to ALJ Removability is Foreclosed by Supreme Court and Tenth Circuit Case Law.

Count II of CBW's Complaint—the challenge to the ALJ's protection against removal—fails to state a claim.[9] Compl. ¶¶ 102-118. As an initial matter, the Tenth Circuit recently held that removal protections for ALJs do not violate the Constitution. *Leachco*, 103 F.4th at 764. Specifically, the Tenth Circuit recognized in *Leachco* that, because ALJs perform "purely adjudicatory function[s]" and Congress permitted but did not mandate that the CPSC use them, insulating them from presidential removal did not significantly impinge on executive powers. *Id.* Here, likewise, the FDIC's ALJs carry out adjudicative rather than executive functions, and nothing in Section 1818 requires the FDIC to rely on ALJs.

Moreover, removability defects do not automatically void actions by challenged officers. *Collins v. Yellen*. 594 U.S. 220, 259-60 (2021). *Leachco* and *Collins* make clear that CBW is not entitled to relief unless it shows that "but for" the allegedly unconstitutional removal provisions, the ALJ would have been removed or the proceedings would be different. 103 F.4th at 757 (no "showing that, but for the allegedly unconstitutional removal provisions, the CPSC commissioners or ALJ Young would have been removed" or that "the proceedings would be different in any way"). CBW has not even alleged that it was harmed by the ALJ's removal protection, beyond "simply being made to participate in the unconstitutional hearing." Compl. ¶ 111. This is insufficient under *Leachco*. Similarly, in *Integrity Advance, LLC v. CFPB*, 48 F.4th 1161 (10th Cir. 2022), the court found no "compensable harm" under *Collins* absent a

---

[9] CBW did not seek injunctive relief based on Count II. It confined its request for a preliminary injunction to Count I, thus Count II is not addressed in the sections to follow. Section 1818(i)'s jurisdictional bar applies with equal force to both Counts I & II.

showing that "the President had wanted to remove the [official] but was stopped" by removability restrictions). *Id.* at 1170. For the reasons above, Count II of the Complaint fails to state a claim.

## II.    CBW CANNOT SHOW IRREPARABLE HARM.

The irreparable harm factor provides reason alone against issuance of a preliminary injunction. This is because the Tenth Circuit has made clear that being subject to allegedly unconstitutional administrative proceedings does not constitute irreparable harm. *Leachco*, 103 F.4th at 753. Instead, the cases finding irreparable harm have been confined to violations of the right to free speech, equal protection, or freedom of religion, "not the allocation of powers among the branches of government." *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020); *Leachco*, 103 F.4th at 753 ("Tenth Circuit precedent establishes that, while violations of certain individual constitutional rights . . . can constitute irreparable harm, violations of the Constitution's separation of powers provisions do not."); *see also Alpine Secs. Corp. v. FINRA*, --- F.4th ---, 2024 WL 4863140, at *15 (D.C. Cir. Nov. 22, 2024) (no irreparable harm in "participating in a proceeding before an unconstitutionally appointed officer").

There is no here-and-now irreparable injury incurred in participating in the administrative process because there is a post-hearing remedy: invalidating the proceeding for lack of a jury trial. "It is well-established that the harm resulting from the denial of a jury trial can be remedied on appeal, even after the case has already been tried—the reviewing court simply orders a new trial." *Ponte II*, 2024 WL 4730602, at *8 (citing cases, and finding no irreparable harm in Seventh Amendment challenge to FDIC enforcement proceeding).[10] Moreover, the Supreme

---

[10] *See, e.g.*, *Tull v. United States*, 481 U.S. 412, 415, 427 (1987) (remanding after bench trial upon finding Seventh Amendment violation); *Granfinanciera*, 492 U.S. at 37, 64–65 (1989) (same); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 986–87, 994 (D.C. Cir. 1998) (same); *Brown v. Sandimo Materials*, 250 F.3d 120, 122, 125–26, 130 (2d Cir. 2001) (same); *Jarkesy*, 144 S. Ct. at 2139 (same); *see*

Court has repeatedly held that litigation costs and expenses do not constitute irreparable injury. *See, e.g., FTC v. Standard Oil*, 449 U.S. 232, 244 (1980) (denying attempt to review enforcement proceeding prior to completion; "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.") (additional citations omitted).

CBW's answer to all of this is to cite *Burgess* for the proposition that the irreparable harm requirement is "automatically satisfied" where a plaintiff shows a Seventh Amendment violation, and to claim the jury trial right is a personal constitutional right akin to freedom of speech. Mot. at 11 (citing *Burgess*, 639 F. Supp. 3d at 749). *Burgess* is contrary to Tenth Circuit case law for separation of powers cases, which require a showing of irreparable harm. *Leachco*, 103 F.4d at 753; *Aposhian*, 958 F.3d at 990. And the *Jarkesy* Court itself described the jury trial issue as implicating the separation of powers. 144 S.Ct. at 2139 (Allowing the SEC to "concentrate the roles of prosecutor, judge, and jury in the hands of the Executive Branch . . . is the very opposite of the separation of powers that the Constitution demands.").

CBW's further ignores that the statute provides for appellate court review once the administrative process is over. This certainty of review differentiates this case from the First Amendment case law where review would be difficult if irreparable harm was not presumed. Mot. at 10-11 (citing *Free the Nipple*, 916 F.3d 792, 802 (10th Cir. 2019)). In *Elrod v. Burns*, 427 U.S. 347 (1976), the Court stated that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id*. at 373. But *Elrod* and *Free the Nipple* say nothing about separation of powers claims, particularly where the statute provides for review following the conclusion of the proceedings. *Leachco*, 103 F.4th at 755.

---

*also Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552-53 (1990) ("[I]n cases involving a wrongful denial of a petitioner's right to a jury trial on legal issues," the Court "ha[s] reversed and remanded each case in its entirety for a trial before a jury," and ultimately "requir[ing] a new trial in this case").

Lastly, it should be noted that in *Winn v. Cook*, the Tenth Circuit held that the alleged denial of a Sixth Amendment right to a jury trial did not constitute an "irreparable injury" for purposes of *Younger* abstention analysis because "[t] he right to a jury trial can be vindicated after an improper nonjury trial by reversing the judge's verdict and ordering a jury trial." 945 F.3d 1253, 1263–64 (10th Cir. 2019). "If the constitutional right can be afforded the defendant later—such as by conducting a jury trial—there is not sufficient ground to intervene." *Id.* There is no basis for arguing that denying a jury trial in a Seventh Amendment context—a civil proceeding—constitutes irreparable injury when the denial of a jury trial in a Sixth Amendment context—a criminal proceeding—does not. The harm CBW complains of is remediable.

## III.    THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST DO NOT FAVOR AN INJUNCTION.

The equities favor denying the request for injunction and allowing the enforcement action to continue, consistent with the system Congress put in place. *See* 12 U.S.C. § 1818(h)(2); *see also* 12 U.S.C. § 1818(h)(3) (noting that, unless otherwise ordered, judicial review "*shall not . . .* operate as a stay of any order issued by the agency") (emphasis added). Bank regulation strengthens individual banks and the banking system as a whole. Indeed, "[b]anking is one of the longest regulated and most closely supervised of public callings," *Fahey v. Mallonee*, 332 U.S. 245, 250 (1947), and an insured institution is regulated "from its cradle to its corporate grave." *Fidelity Fed. S&L Ass'n v. de la Cuesta*, 458 U.S. 141, 145 (1982) (citation omitted).[11] As "all government action pursuant to a statutory scheme" is "presumed [to be] taken in the public interest," *Aid for Women v. Foulston*, 441 F.3d 1101, 1115 n.15 (10th Cir. 2006), the public interest favors the FDIC's enforcement of banking laws under § 1818(i)(2).

---

[11] *See also United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 329 (1963) (considering the "frequent and intensive" nature of the examination process, and noting that "the agencies maintain virtually a day-to-day surveillance of the American banking system."); 1 K. Davis, Administrative Law § 4.04, at 247 (1958) ("The regulation of banking may be more intensive than the regulation of any other industry.").

The FDIC's role in ensuring confidence in the nation's financial system and the fact that the FDIC is acting pursuant to a statutory scheme set forth by Congress weighs strongly against the issuance of a preliminary injunction that, if broadly followed, could render the FDIC's enforcement scheme, and an act passed by Congress, toothless. This is particularly so given CBW's unquestioned ability to seek relief in the Tenth Circuit or the D.C. Circuit. Any other result would run counter to Congress's intention and render meaningless the unambiguous withdrawal of jurisdiction in 12 U.S.C. § 1818(i)(1).

## IV.    A SUBSTANTIAL BOND WOULD BE WARRANTED.

Federal Rule of Civil Procedure 65(b) requires the posting of security by an applicant for an injunction to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. No injunctive relief is warranted in this case. *See Front Range Equine Rescue v. Vilsack*, 844 F.3d 1230, 1235 (10th Cir. 2017) (denying recovery of bond where there was no finding that party was wrongfully enjoined). But to the extent such relief is deemed appropriate, the FDIC requests that CBW first post a substantial bond given that the underlying case seeks a CMP in excess of $20 million. Such a bond would ensure that, should an injunction be later found unwarranted, the FDIC will be compensated for its costs.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Motion for Preliminary Injunction be denied, and further request that this case be dismissed for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted.

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE CORPORATION
Andrew Dober
Senior Counsel

/s/ Erik Bond
Erik Bond N.Y. Bar Reg. 4316030
District of Kansas Bar No. 79224
Counsel
Dominique Park, WSBA Bar No. 38925
District of Kansas Bar No. 79196
Senior Attorney
3501 Fairfax Drive
Arlington, VA 22226-3500
Tel.: (703) 562-6461
Fax: (703) 562-2477
Email: erbond@fdic.gov

DATED: December 20, 2024