IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CBW BANK,**<br><br>    **Plaintiff**,<br><br>v.<br><br>**FDIC, et al.**,<br><br>    **Defendants**. | Case No. 24-2535-DDC-BGS |

## **MEMORANDUM AND ORDER**

Jury or ALJ?  That is the question plaintiff's preliminary injunction request poses for the court.  Plaintiff CBW Bank, Weir, Kansas, faces imminent administrative proceedings because it allegedly failed to comply with the Federal Deposit Insurance Corporation (FDIC)'s anti-money-laundering regulations.  The FDIC has issued a Notice of Assessment of Civil Money Penalty against plaintiff, to the tune of more than $20 million.  And plaintiff asks this court to intervene by preliminarily enjoining defendants' administrative proceeding.  Doc. 2.  Plaintiff's Complaint also seeks declaratory and permanent injunctive relief on its right to a jury and on ALJ removability.  Doc. 1 at 22–23 (Prayer for Relief ¶¶ 1–4).  Defendants—the FDIC and two Administrative Law Judges (ALJs)—oppose the preliminary injunction and move to dismiss. Doc. 13.

In its Motion for a Preliminary Injunction (Doc. 2), plaintiff challenges the FDIC's enforcement proceedings by asserting structural constitutional claims—not challenging the merits of the FDIC's penalty itself.  Doc. 2 at 15 ("CBW is challenging the power of the Board 'to proceed at all' when it offers no jury trial right or Article III decisionmaker.  CBW is not

challenging a specific damages award."). Plaintiff contends the FDIC proceedings violate its Seventh Amendment right to a jury trial. *Id.* at 2. Plaintiff premises its preliminary injunction claim on *SEC v. Jarkesy*, a recent Supreme Court opinion invalidating in-house Securities and Exchange Commission (SEC) enforcement proceedings as violating the Seventh Amendment jury trial right. 603 U.S. 109 (2024). *Jarkesy* held that SEC-imposed civil monetary penalties are legal in nature. *Id.* at 122–25. And it concluded that SEC proceedings didn't fall under the public rights exception. *Id.* at 134–36. Put those two together, plaintiff contends, and a jury—not an ALJ in an administrative proceeding—must decide the case. *Id.* at 140. Plaintiff asks the court to take *Jarkesy*'s logic, apply it to the FDIC, and enjoin the upcoming proceedings. *See* Doc. 2 at 3. That way, plaintiff escapes irreparable harms allegedly incurred by the ALJ proceeding itself: deprivation of plaintiff's constitutional right to a jury as the fact-finder and business or reputational injury flowing from the proceeding. *Id.* at 3–4. The court must act now, plaintiff contends, because one can't unwind those harms once the FDIC proceeding takes place—the familiar "one-can't-unscramble-eggs theory" of irreparable harm. *Id.* at 4.

Plaintiff also asks the court to issue a preliminary injunction premised on ALJ removability—a request added in response to FDIC's Notice of Change in Position (Doc. 33). Doc. 34 at 2 n.1. Specifically, FDIC's Notice informed the court on February 24, 2025 "that the United States will no longer defend" multiple layers of removal restrictions of administrative law judges. Doc. 33 at 1. It explained that "the Acting Solicitor General has decided that the multiple layers" don't "comport with the separation of powers and Article II." *Id.* In responding to that Notice, plaintiff added Count II—about ALJ removability—to its preliminary injunction request. Doc. 34 at 2 n.1.

But the court can't do what plaintiff asks. It can't because it doesn't have subject matter jurisdiction over the claims pleaded in plaintiff's Complaint and, by extension, no jurisdiction over its injunction request. By statute, Congress explicitly has precluded district court jurisdiction over FDIC enforcement proceedings, except in specified circumstances—neither of which apply here.

The court explains its jurisdictional analysis, below. It begins with the background facts, followed by an overview of subject matter jurisdiction and the specific statutory provision precluding jurisdiction here, 12 U.S.C. § 1818(i)(1).

## I. Background

The court draws the following background from plaintiff's Complaint (Doc. 1) and the FDIC's Notice of Assessment (Doc. 13-1).[1]

### *Notice of Charges*

Plaintiff is a single-branch, Kansas state-chartered bank headquartered in Weir, Kansas. Doc. 1 at 7 (Compl. ¶ 33). On November 19, 2024, the FDIC filed a Notice of Assessment of Civil Money Penalty against plaintiff. *Id.* at 14 (Compl. ¶ 71); Doc. 13-1 at 1 (Notice). That Notice assesses a monetary penalty for plaintiff's former conduct in its correspondent banking and money services businesses—businesses long-since abandoned by plaintiff. Doc. 1 at 14

---

[1] The court properly can consider documents subject to judicial notice when deciding a motion to dismiss. So, though it falls outside the Complaint, the court properly can take judicial notice of the FDIC's Notice of Assessment, which has direct relation to matters at issue. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (concluding that district court did not err "in taking judicial notice of public records from the parties' administrative and judicial proceedings"). "However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 741 n.3 (10th Cir. 2023) (quotation cleaned up). The court thus judicially notices the FDIC's Notice of Assessment, styled *In re CBW Bank*, No. FDIC-22-0171k. Doc. 13-1.

3

(Compl. ¶ 71). That is, the FDIC contends that plaintiff "failed to maintain an adequate Anti-Money Laundering/Countering the Financing of Terrorism (AML/CFT) compliance program," violating various statutes and regulations. Doc. 13-1 at 1.

More specifically, the FDIC alleges that plaintiff "provided banking to its mainly rural, retail customer base from the Weir location, but generated the bulk of its earnings from fee-based correspondent banking services for foreign financial institutions (FFIs)." *Id.* at 3. Plaintiff allegedly provided international banking services to more than 30 FFIs in Central and South America, Europe, Africa, and the Middle East. *Id.* For example, in 2018 plaintiff allegedly processed more than $27 billion in wire transactions for FFIs, some of which sit in "high-risk jurisdictions" such as Lebanon, Brazil, and Cyprus. *Id.* at 8. Plaintiff allegedly failed to monitor that activity appropriately, including repeated failures to detect or report suspicious activity. *Id.* at 9. Based on this and other alleged shortcomings, the FDIC assessed a $20,448,000 penalty against plaintiff. *Id.* at 21.

The FDIC issued the Notice to plaintiff after failed settlement negotiations where the FDIC proposed a stipulation, but plaintiff refused to agree to it. Doc. 1 at 15 (Compl. ¶ 77).

### ***Upcoming FDIC Proceedings***

Plaintiff plans to request a hearing on the Notice. *Id.* (Compl. ¶ 78). The hearing will occur before one of the two ALJs named as official capacity defendants here—either ALJ Jennifer Whang or ALJ C. Scott Maravilla. *Id.* (Compl. ¶ 79); *id.* at 1. The hearing will begin on an unspecified date set by the ALJ in Kansas City, Kansas (or another location set by the ALJ). Doc. 13-1 at 21. The ALJ will conduct the hearing in public and in accordance with the Administrative Procedure Act and other specified federal regulations. *Id.*

4

### *Plaintiff's Claims*

In this action, plaintiff brings two claims. Initially, it confined its preliminary injunction request solely to the first claim, but later expanded the scope of the injunction request. *See generally* Doc. 2; Doc. 34 at 2 n.1. Plaintiff also seeks declaratory and permanent injunctive relief on both claims.

*First*, plaintiff contends that an ALJ's adjudication of legal claims without a jury trial violates the Seventh Amendment. Doc. 1 at 18 (Compl. ¶ 93). And it alleges that "simply being made to participate in the unconstitutional hearing causes [plaintiff] . . . harm" and irreparable harm, at that. *Id.* at 18, 19 (Compl. ¶¶ 95, 98). What's more, the civil monetary penalties, if imposed, "will consume substantial amounts of [plaintiff's] capital and harm its reputation." *Id.* at 19 (Compl. ¶ 96). So, plaintiff asks the court to intervene and grant injunctive and declaratory relief. *Id.* (Compl. ¶ 100). Specifically, plaintiff asks the court to enjoin preliminarily and permanently any FDIC proceeding against it that's adjudicated without a jury. *Id.* at 22, 23 (Prayer for Relief ¶¶ 2, 4). And plaintiff asks the court to declare that the FDIC proceedings deprive plaintiff of its constitutional jury trial right. *Id.* at 22 (Prayer for Relief ¶ 1.c.).

*Second*, plaintiff alleges that the ALJs, who preside over the FDIC proceedings, enjoy protections from removal that violate Article II of the United States Constitution. *Id.* at 20 (Compl. ¶ 106). Plaintiff asserts having to undergo "proceedings before unconstitutionally insulated agency" officials "qualifies as a here-and-now injury" for which this court should grant declaratory relief. *Id.* at 20, 21 (Compl. ¶ 108, 113) (quotation cleaned up). Plaintiff thus asks the court to declare any provision restricting ALJ removal unconstitutional. *Id.* at 22 (Prayer for Relief ¶ 1.a.). Plaintiff also asks the court to enjoin permanently defendants "from implementing or carrying out the unconstitutional removal-protection provisions[.]" *Id.* at 22 (Prayer for Relief ¶ 3).

## II.     Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction" (citation and internal quotation marks omitted)).

This case requires the court to determine the scope of its jurisdiction over FDIC enforcement actions. Congress limited the court's jurisdiction in the Federal Deposit Insurance Act, 12 U.S.C. § 1818. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider" including "when, and under what conditions, federal courts can hear them." *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007). "Congress . . . may substitute for . . . district court authority an alternative scheme of review." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). Congress thus *implicitly* can substitute "by specifying a different method to resolve claims about agency action." *Id.* Or Congress *explicitly* can substitute "providing in so many words that district court jurisdiction will yield." *Id.* Congress chose the explicit route in 12 U.S.C. § 1818, as explained below.

## III.    12 U.S.C. § 1818

Title 12 U.S.C. § 1818 expressly provides for a "tripartite regime of judicial review[,]" involving both the appellate and district courts. *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 38 (1991). Specifically, the statute "authorizes court of appeals review of

6

final Board orders on the application of an aggrieved party." *Id.* (citing § 1818(h)). A district court may get involved in just two situations: *First*, "within 10 days after service of a temporary order," the district court may "restrain[] enforcement of the order pending completion of the related administrative proceeding." *Id.* (citing § 1818(c)(2)). *Second*, "the Board may apply to district court for enforcement of any effective and outstanding notice or order." *Id.* (citing § 1818(i)(1)).

Outside those two specific situations, however, Congress explicitly precluded the court's jurisdiction. Section 1818 provides that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order." § 1818(i)(1). *MCorp* opined about the "clarity of the congressional preclusion of review" in this statute. 502 U.S. at 43. It described § 1818(i)(1)'s language as "plain" and "preclusive[,]" and emphasized that "Congress has spoken clearly and directly" in this jurisdiction-stripping provision. *Id.* at 39, 44 (citing § 1818(i)(1)). In other words, "the statute provides [the Supreme Court] with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings." *Id.* at 44. The Tenth Circuit, too, has recognized the clarity of Congress's directive, referring to § 1818(i)(1)'s strip of jurisdiction as a "blanket prohibition[.]" *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994).

Under this Supreme Court and Tenth Circuit precedent, as outlined above, the scope of this court's jurisdiction is straightforward—it has none. Plaintiff's claims don't align with either of the statutory exceptions permitting district court involvement. *See* §§ 1818(c)(2), (i)(1). Plaintiff doesn't bring a temporary order and ask the court to restrain its enforcement until after the FDIC proceeding concludes. § 1818(c)(2). Nor has the Board applied to the court to enforce

an outstanding notice. § 1818(i)(1). Apart from these two situations, the statute, "clear[ly] and convincing[ly,]" in blanket fashion, eliminates the court's jurisdiction. The case is closed—at this level, anyway.

But hold on a second, plaintiff responds. Yes, neither of the statutory exceptions apply here. And yes, § 1818(i)(1) explicitly strips a district court of jurisdiction for substantive challenges to FDIC enforcement proceedings. But, plaintiff contends, that analysis changes when a plaintiff presents a structural constitutional challenge. Doc. 2 at 15–16. Amici, the American Bankers Association, the Bank Policy Institute, and the National Bankers Association, agree with plaintiff. Doc. 23 at 17–18. Structural constitutional claims—they all assert—merit a different analysis. Doc. 2 at 15–16; Doc. 23 at 17–18. The court takes up that argument, next.

## IV.     Structural Constitutional Challenges and an Explicit Jurisdictional Bar

Plaintiff and amici argue that the court's jurisdictional analysis should shift when it comes to structural constitutional challenges. Doc. 2 at 15–16; Doc. 23 at 17–18. This general principle rests on good authority. In *Axon Enterprise, Inc. v. FTC*, the Supreme Court held that structural constitutional challenges to SEC and FTC enforcement proceedings didn't fall within the ambit of the relevant statutory review schemes. 598 U.S. 175. The Court acknowledged that "creation of such a review scheme for agency action divests district courts of their *ordinary* jurisdiction over the covered cases." *Id.* at 185 (emphasis added). But, *Axon* clarified, "a statutory review scheme of that kind does not necessarily extend to every claim concerning agency action." *Id.* And so, the Court applied three factors—commonly referred to as the *Thunder Basin* factors—to evaluate whether Congress intended to preclude district court jurisdiction for structural constitutional claims. *Id.* at 185–86. It didn't, the Court concluded, explaining that structural constitutional "claims are not of the type the statutory review schemes

8

reach." *Id.* at 196 (quotation cleaned up). And so, the Court determined, a "district court can therefore review them." *Id.*

Here's the problem. The statutory review schemes at issue in *Axon implicitly* precluded district court jurisdiction. That is, Congress enacted a "'comprehensive review process'"—but didn't adopt an explicit bar—which "ousted district courts of jurisdiction." *Id.* at 186 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208, 212 (1994)). But that operative statute at issue here, 12 U.S.C. § 1818, is different.

Recall that when Congress *explicitly* precludes jurisdiction, it "provid[es] in so many words that district court jurisdiction will yield." *Id.* at 185. Recall, too, that § 1818(i)(1) specifies that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order[.]" Unlike the review schemes in *Axon*, Congress's words in § 1818(i)(1) explicitly foreclose district court jurisdiction. And that matters because it means this case doesn't fall under the *Axon* lines of cases. The explicit jurisdictional bar indicates this court needn't apply—indeed, it shouldn't apply—the *Thunder Basin* factors here.

When considering a different statute's explicit jurisdiction-stripping provision, the Ninth Circuit explained the role of the *Thunder Basin* factors in this fashion:

> Plaintiffs rely on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and its progeny, including *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023). In particular, Plaintiffs note that in *Axon*, the Court held that because the plaintiffs challenged the agency's "power to proceed at all, rather than actions taken in the agency proceedings," *id.* at 192, their case was not jurisdictionally barred, *id.* at 196. The *Thunder Basin* line of cases, however, is inapposite because those cases address only whether Congress has "implicitly" divested district courts of jurisdiction in a statutory scheme. *Axon*, 598 U.S. at 185. In this case, Congress explicitly divested courts of jurisdiction to hear the claims at issue. Accordingly, the district court correctly concluded that it lacked jurisdiction[.]

*Azimov v. U.S. Dep't of Homeland Sec.*, No. 22-56034, 2024 WL 687442, at *1 (9th Cir. Feb. 20, 2024) (addressing 8 U.S.C. § 1252(a)(2)(A)); *see also Bohon v. FERC*, 92 F.4th 1121, 1124

9

(D.C. Cir. 2024) ("But . . . today's case does not depend on statutory implications, *Thunder Basin*'s multi-factor test, or *Axon*'s application of those factors. Instead, . . . Congress explicitly exercised its constitutional power to define the jurisdiction of federal courts. Nothing in *Axon* requires us to ignore that text or allows us to displace it." (citations omitted)); *Perdue Farms Inc. v. Su*, No. 24-CV-477-BO-RJ, 2025 WL 338283, at *2 (E.D.N.C. Jan. 29, 2025) ("*Axon*, as well as *Thunder Basin* on which it relies, address *implicit* divestiture of jurisdiction in the district courts, and are inapposite where there is *explicit* divestiture." (emphasis added) (citations omitted)).

Also, refusing to apply *Axon* and the *Thunder Basin* factors here makes sense. For this court to enjoin an FDIC enforcement proceeding—even with the laudatory goal of addressing structural constitutional claims—would contravene Congress's jurisdictional bar directly. That is, any action by this court necessarily would "affect by injunction or otherwise" the FDIC's pending notice to plaintiff. § 1818(i)(1). And Congress forbade such involvement, explicitly mandating that "no court shall have jurisdiction" to "affect" a notice. *Id.* Such head-on exclusion differs meaningfully from an implicit jurisdiction-stripping statute, where the court must discern Congress's likely intent. Here, there's no need to guess about Congress's intention. Congress stated its intention plainly. So the court must abide by it.

Justice Gorsuch, in his *Axon* concurrence, identified § 1818(i)(1) as a specific example of explicit preclusion. *See* 598 U.S. at 208 (describing 12 U.S.C. § 1818(i)(1) as a situation where Congress "simply tells" federal courts that it's stripping them of jurisdiction instead of requiring the courts to "guess at the implicit intentions of legislators past"). Other courts to address § 1818(i)(1) have concluded the same, as explained next.

10

A.     **Weight of Authority**

Other district courts have addressed the precise issue now presented to our court: whether a structural constitutional claim alters Congress's explicit strip of district court jurisdiction. Some took up this issue in the specific context of 12 U.S.C. § 1818(i)(1). Others addressed it when considering identical jurisdiction-stripping provisions housed in other statutes. The bulk of those cases reach the same result: A structural constitutional claim *does not* shift a court's jurisdictional analysis when Congress's preclusion is explicit. The court reviews some of those cases, below.

1.     *Bonan v. FDIC*

Begin with *Bonan v. FDIC*, No. 23-cv-8-HEA, 2023 WL 156852 (E.D. Mo. Jan. 11, 2023). There, the court dismissed a case with a procedural posture and structural constitutional arguments remarkably similar to the case at hand. *Id.* Frank William Bonan II was awaiting an FDIC enforcement proceeding before ALJ Whang—a proceeding by which the FDIC sought to impose a civil money penalty, among other enforcement actions. *Id.* at *1. Bonan moved for a temporary restraining order and preliminary injunction. *Id.* at *2. He alleged that the FDIC action against him violated his Seventh Amendment jury trial right, and also asserted that "the structure of the FDIC board of directors and the tenure protections afforded to the FDIC ALJs is unconstitutional." *Id.* at *1. He also argued that "Section 1818(i)(1) d[id] not divest [the court] of jurisdiction to hear structural constitutional claims that are exogenous to the enforcement proceeding." *Id.* at *3. A Missouri federal court disagreed.

*Bonan* concluded that "12 U.S.C. § 1818(i)(1) explicitly divests this Court of jurisdiction to grant the injunctive and declaratory relief sought." *Id.* at *4. And it clarified that "FDIC Enforcement proceeding respondents . . . who wish to raise constitutional challenges must raise

11

them with the Court of Appeals[.]" *Id.*  In other words, Congress's explicit jurisdictional bar precluded district court jurisdiction—even over structural constitutional claims.

In the wake of *Axon*, another district court reached the same explicit bar conclusion.

### 2. *Ponte v. FDIC*

In *Ponte v. FDIC*, John C. Ponte brought structural constitutional claims in district court against the FDIC.  No. 23-cv-00165-MSM-LDA, 2023 WL 6441976, at *1 (D.R.I. Oct. 3, 2023). He alleged "that (1) the FDIC is unconstitutionally structured because the President cannot remove a majority of its Board; (2) the administrative law judges used by the FDIC are unconstitutionally shielded from removal; and (3) the FDIC enforcement proceeding deprived him of his Seventh Amendment right to a jury trial." *Id.* at *1 n.1.  And, he contended, *Axon* should shift the court's jurisdictional analysis.  *Id.* at *1.  The district court wasn't persuaded.

*Ponte* identified § 1818(i)(1) as an explicit jurisdictional bar and explained "that district courts are not to 'affect' FDIC enforcement proceedings." *Id.* at *2.  And so, the court declined to consult "the *Thunder Basin* factors to discern congressional intent—that intent is clear." *Id. Ponte* concluded, as *Bonan* had before it, that "§ 1818(i)(1) precludes this Court's jurisdiction over Mr. Ponte's claims, constitutional or otherwise.  Instead, those claims must be raised in the administrative process and, per § 1818(h)(2), may be reviewed by the appropriate court of appeals." *Id.*  Accordingly, *Ponte* granted the FDIC's Motion to Dismiss under Rule 12(b)(1). *Id.*

### 3. **Similarly Worded Provisions of Preclusion**

Finally, similarly worded jurisdiction-stripping provisions—housed in other statutes— have produced similar explicit preclusion results.  For example, in *Moats v. Nat'l Credit Union Admin. Bd.*, Jeffrey Moats brought constitutional claims in federal district court against the National Credit Union Administration (NCUA).  No. 23-cv-147, 2024 WL 1724271, at *1 (S.D.

Tex. Apr. 9, 2024). Moats alleged, among other things, that NCUA ALJ removal protections are unconstitutional and that NCUA proceedings violate his Seventh Amendment jury trial right. *Id.* The district court held that Congress had precluded its jurisdiction explicitly based on the text of the preclusion statute. *Id.* at *2–*3. That statute read—and this should sound familiar—"'no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order . . . or to review, modify, suspend, terminate, or set aside any such notice or order.'" *Id.* at *2 (quoting 12 U.S.C. § 1786(k)(1)). Section 1786(k)(1)'s preclusion language is identical to that in § 1818(i)(1). *Moats* concluded that "the markedly expansive language of § 1786(k) alone is sufficient to establish the required intent to preclude constitutional claims." *Id.* at *3. And it deemed § 1786(k) "an explicit bar to all of Moats's claims, constitutional or otherwise." *Id.* at *4. The court, therefore, granted NCUA's Motion to Dismiss because the court lacked subject-matter jurisdiction over the case. *Id.*

     **4. Summary**

To recap: three cases addressing preclusion language identical to the language at issue here produced three identical results. The weight of this authority thus favors barring our court's jurisdiction. And the court predicts the Tenth Circuit would so conclude, as well, for reasons it outlines, next.

  **B. Tenth Circuit**

The Tenth Circuit hasn't addressed jurisdiction and structural constitutional challenges under § 1818(i)(1) specifically. But one recent Tenth Circuit case proves instructive in predicting how our Circuit would rule here, *Smith v. Bd. of Governors of Fed. Rsrv. Sys.*, 73 F.4th 815 (10th Cir. 2023). There, the Tenth Circuit outlined how a party caught up in an allegedly unconstitutional FDIC enforcement proceeding may present a structural constitutional challenge.

13

In *Smith*, petitioners challenged, among other things, the validity of the ALJs, arguing that their appointments violated the Appointments Clause. *Id.* at 820; *see also* U.S. Const. Art. II, § 2, cl. 2. The Tenth Circuit declined to consider this structural challenge because petitioners didn't raise it before the ALJ or the Board below. *Smith*, 73 F.4th at 823. Nonetheless, our Circuit clarified what petitioners *could have done* to secure review of their structural constitutional challenge—they could have appealed to the Board of Governors. *Id.* The Circuit also noted that "futility did not deter Petitioners from making other collateral attacks on the proceeding by, for example, filing a motion requesting the ALJ dismiss the enforcement action." *Id.* (quotation cleaned up).

The Circuit thus contemplated that a party could present collateral attacks on FDIC enforcement actions—including structural constitutional attacks—in the context of the administrative proceeding, then on appeal to the Board, and, finally, on review by the Circuit. *Id.* This approach aligns with Congress delegating jurisdiction to the appellate courts. *See* § 1818(h)(1)–(2) ("Judicial review . . . shall be exclusively as provided in this subsection . . . . Any party . . . may obtain a review of any order . . . by the filing in the court of appeals of the United States . . . a written petition praying that the order of the agency be modified, terminated, or set aside."). And its faithful to Congress's explicit directive to preclude the district court from interfering or otherwise affecting the FDIC proceedings. *See* § 1818(i)(1) ("[N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice[.]").

Our Circuit's structure for raising structural constitutional claims also answers plaintiff and amici's argument that the jurisdictional bar asserted here denies it review completely. Doc. 17 at 6; Doc. 23 at 18–22. To be sure, the structure delays review until the appellate level; but it

14

doesn't deny review. Consider *Jarkesy*, for example. 603 U.S. 109. Plaintiffs there petitioned for judicial review at the Fifth Circuit after the SEC final order had levied penalties against them. *Id.* at 119. The Fifth Circuit held, and the Supreme Court later affirmed, that a jury's absence in the SEC proceedings violated the Seventh Amendment. *Id.* at 119–20, 141. Plaintiff here likewise can appeal to the Board and then petition the Court of Appeals for review of its structural constitutional claims. The court thus predicts that the Tenth Circuit would conclude that § 1818(i)(1) divests this district court of its jurisdiction here.

Plaintiff, naturally, tries to avoid this result. It pins its hopes on *Burgess v. FDIC*, a recent opinion from the Northern District of Texas. 639 F. Supp. 3d 732 (N.D. Tex. 2022); *see generally* Doc. 2. Amici likewise point in *Burgess*'s direction. Doc. 23 at 17–18 Below, the court briefly addresses *Burgess*—and why plaintiff can't invoke it here.

### C. *Burgess v. FDIC*

In *Burgess*, the district court enjoined an FDIC proceeding after deciding that § 1818(i)(1) doesn't bar the district court's subject matter jurisdiction *over structural constitutional claims*. 639 F. Supp. 3d at 742. *Burgess* first concluded that § 1818(i)'s *explicit* bar to district court jurisdiction doesn't encompass structural constitutional claims. *Id. Burgess* explained that § 1818(i) "makes no mention of constitutional claims, and thereby, any intent of Congress to strip the district court's jurisdiction over constitutional claims was not made clear." *Id.* Then, *Burgess* considered whether § 1818(i)(1) *implicitly* bars a district court from hearing structural constitutional claims by consulting the Supreme Court's *Thunder Basin* factors. *Id.* at 743. And it found wiggle room in that implicit analysis to exercise district court jurisdiction. It then enjoined the FDIC proceedings. *Id.* at 743–45, 750.

But *Burgess*'s choice to engage in an implicit preclusion analysis—instead of acknowledging § 1818(i)(1)'s explicit preclusion—isn't persuasive to this court. To chart an

implicit preclusion course, *Burgess* leaned hard into a Fifth Circuit opinion—*Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019). *Bank of Louisiana*, too, had conducted an implicit preclusion analysis under § 1818(i)(1). *Id.* at 923–30. But *Bank of Louisiana* clarified that the district court's approach—and not any independent conclusion about the propriety of implicit preclusion under § 1818(i)(1)—drove its analysis. *Id.* at 923 (explaining that the "parties and the district court addressed the question presented under the implicit preclusion analysis, and we therefore do the same"). And later, *Bank of Louisiana* explicated, more fulsomely, its implicit preclusion choice:

> [S]o robust is the section 1818(i)(1) bar that, on appeal, the FDIC invites us to stop there and decline to analyze the three *Thunder Basin* factors. It is a tempting offer. . . . Despite the attractiveness of this argument, we think it prudent to cycle through the *Thunder Basin* factors, as did the district court. Those factors *reinforce* the conclusion that the review scheme precludes district court jurisdiction over the Bank's claims.

*Id.* at 924–25 (emphasis added). In short, *Bank of Louisiana* simply applied an implicit preclusion analysis to *reinforce* its explicit preclusion conclusion, and so the Fifth Circuit consulted implicit preclusion (as had the district court).

Two years later, the Fifth Circuit, en banc, expressly identified § 1818(i)(1)'s preclusion as explicit. *Cochran v. SEC*, 20 F.4th 194, 204 (5th Cir. 2021) (en banc) (distinguishing explicit preclusion in § 1818(i)(1), as addressed in *Bank of Louisiana*, from possible preclusion in 15 U.S.C. § 78y). When it did so, *Cochran* clarified its earlier holding in *Bank of Louisiana*. It explained that *Bank of Louisiana* had held "that district court jurisdiction was *explicitly* divested" by "'the plain terms of section 1818(i)[.]'" *Id.* (emphasis in original) (quoting *Bank of Louisiana*, 919 F.3d at 924). In short, *Cochran* back-peddled, distancing § 1818(i)(1) from an implicit preclusion analysis. The Fifth Circuit decided *Cochran* in 2021, while the Northern District of Texas decided *Burgess* in 2022. So, in this court's view, *Burgess*'s reliance on

16

implicit preclusion (and the *Thunder Basin* factors) in the context of § 1818(i)(1)'s explicit bar was misplaced.

In sum, plaintiff's use of *Burgess* doesn't help with its problem. Defendants contend that *Burgess* was an outlier that "was incorrectly decided[.]" Doc. 13 at 12. Congress precluded jurisdiction explicitly in § 1818(i)(1), not implicitly. So, the court agrees that how a structural constitutional claim fares under *Thunder Basin*'s implicit preclusion factors is of no moment here. And this court declines to apply them. Plaintiff thus hasn't shouldered its burden to prove federal jurisdiction exists here. *See Siloam Springs*, 906 F.3d at 931 ("Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." (citation and internal quotation marks omitted)).

Here's the bottom line. "Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004); *see* U.S. Const. art. III. § 1 (vesting the judicial power "in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish"). "For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act *ultra vires*." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). Succinctly, "when it comes to jurisdiction, the Congress giveth and the Congress taketh away." *In re al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015) (citing *Estep v. United States*, 327 U.S. 114, 120 (1946)). Congress took away district court jurisdiction in § 1818(i)(1). This court can't—and won't—snatch it back.

## V. Conclusion

The court doesn't opine whether *Jarkesy* requires a jury trial for FDIC proceedings. Nor does the court express a view whether ALJ removability presents constitutional issues for the FDIC's enforcement actions. The court passes on these issues because this case suffers from an

17

incurable jurisdictional defect.  So, those questions aren't ones that this court properly can decide.

Any relief the court might provide plaintiff necessarily would "affect by injunction or otherwise the issuance or enforcement" of an FDIC notice.  § 1818(i)(1).  And Congress explicitly stripped the court's jurisdiction to "affect" the issuance or enforcement of such a notice.  *Id.*  The court thus dismisses plaintiff's Complaint and its Motion for Preliminary Injunction because it lacks subject matter jurisdiction over them, as required under 12 U.S.C. § 1818(i)(1).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff CBW Bank's Motion for Preliminary Injunction (Doc. 2) is dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Dismiss (Doc. 13) is granted under Fed. R. Civ. P. 12(b)(1).  The case is dismissed without prejudice, and the Clerk of the Court must close the case.

**IT IS SO ORDERED.**

**Dated this 3rd day of March, 2025, at Kansas City, Kansas.**

                                                             **s/ Daniel D. Crabtree**
                                                             **Daniel D. Crabtree**
                                                             **United States District Judge**